# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MILLENNIUM LAB HOLDINGS II, LLC, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-12284 (LSS)<br><br>Jointly Administered |
| MARC S. KIRSCHNER solely in his capacity as TRUSTEE of THE MILLENNIUM CORPORATE CLAIM TRUST<br><br>Plaintiff,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, N.A., CITIBANK N.A., BMO HARRIS BANK, N.A., and SUNTRUST BANK,<br><br>Defendants. | Adv. Pro. No. 17-51840 (LSS)<br><br>**Re: Adv. D.I. 11** |

## MEMORANDUM

Defendants have filed a motion to dismiss or stay this adversary proceeding ("Motion to Dismiss").[1] Briefing is complete[2] and I heard oral argument on December 6, 2018.

---

[1] Defendants' Motion to Dismiss the Complaint or to Stay Proceedings, December 13, 2017, Dkt. No. 11.

[2] Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint or to Stay Proceedings, December 13, 2017, Dkt. No. 12; Declaration of Jason M. Madron in Support of Defendants' Motion to Dismiss the Complaint or to Stay Proceedings, December 13, 2017, Dkt. No. 13; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint or to Stay Proceedings, January 19, 2018, Dkt. No. 34; Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint or to Stay Proceedings, February 9, 2018, Dkt. No. 37.

While the Complaint (Dkt. No. 1) describes the history of Millennium Laboratories LLC ("Millennium") in some detail, the facts necessary to determine this motion as gleaned from the Complaint can be summarized as follows.[3]

On April 16, 2014, Millennium borrowed $1.775 billion from a group of mutual funds, hedge funds and institutional investors in exchange for the issuance of certain term loan notes ("2014 Transaction"). Millennium received the term loan proceeds, net of a $35.3 million fee ("Fee"), of which $19,415,000 was paid to Defendant J.P. Morgan Chase Bank, N.A. ("JPMNA"), $12,355,000 was paid to Defendant Citibank N.A., $1,765,000 was paid to Defendant BMO Bank Harris N.A. and $1,765,000 was paid to Defendant SunTrust Bank. As contemplated in the loan documents, that same day the remaining term loan proceeds were used (x) to retire existing debt owed to certain lenders (including JPMNA) in the amount of $304 million, (y) to repay existing debentures in the amount of $196 million to equity holder TA Associates, and (z) to pay $1.2 billion in dividends and/or bonuses (collectively, "Dividend") to TA Associates, ML Holdings II (the other equity holder) and Millennium's managers and officers (collectively defined in the Complaint as the "Controlling Persons").

In his Complaint, Plaintiff Marc S. Kirschner as Trustee of the Millennium Corporate Claim Trust ("Trustee" or "Plaintiff") formed under the confirmed plan of reorganization in Millennium's bankruptcy case[4] sues Defendants to recover the Fee. In

---

[3] As required on a motion to dismiss, the facts recited herein are taken from the Complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court is not required to make findings of fact or conclusions of law on a motion to dismiss under Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012, and I make none. *See* Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

[4] Amended Prepackaged Joint Plan of Reorganization of Millennium Lab Holdings II, LLC, et al. (Main Case Dkt. No. 182).

Count I of the Complaint, Trustee alleges that the transfer of the Fee constitutes an actual fraudulent conveyance under § 548(a)(1)(A) of the Bankruptcy Code[5] and he seeks to recover from each Defendant its share of the Fee as an initial transferee. Trustee alleges that Millennium borrowed the funds, and paid the Fee, for the express purpose of funding the Dividend to the Controlling Persons with no regard for how the loan would be repaid, and thus, with the intent to hinder, delay or defraud creditors.

In Count II of the Complaint, Trustee alleges that the transfer of the Fee constitutes a constructive fraudulent conveyance under § 548(a)(1)(B). Trustee alleges that Millennium did not receive reasonably equivalent value for the payment of the Fee when considering the Dividend to the Controlling Persons such that, by definition, Millennium received no benefit from the transaction. Trustee further alleges that Defendants knew about the uses of the loan proceeds, and, indeed, that JPMNA affiliate J.P. Morgan Securities LLC ("JPM Securities"), suggested Millennium consider the leveraged loan and resulting dividend (together with a syndication of the term loan) as its financing vehicle. Trustee alleges that JPM Securities together with Citibank affiliate Citibank Global Markets Inc. led the process to obtain a favorable rating, and that Defendants created a confidential investor memorandum ("CIM") to market the loan. Trustee alleges that, all the while, Defendants were in a position to know, and did know, that Millennium's operations were the subject of investigations by the Department of Justice for violation of the Stark Law and the federal kickback statute and that Millennium had been sued under applicable qui tam statutes by several relators, and separately by a competitor alleging improper billing practices. Trustee

---

[5] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)."

alleges, therefore, that Millennium incurred the obligation to pay the Fee and paid it (x) at a time when it was insolvent, or thereby rendered insolvent and for less than reasonably equivalent value; (y) when it was engaged in a business or transaction or was about to engage in a business or transaction for which its remaining property was an unreasonably small capital; or (z) when it intended to incur or believed it would incur debts beyond its ability to pay as they matured.

In the Motion to Dismiss, brought under Rule 12(b)(6),[6] Defendants request that I dismiss Count I on two grounds: (i) that Plaintiff does not plead the confluence of badges of fraud and (ii) misstatements or omissions in the marketing materials for the term loan cannot form the basis for an actual fraudulent conveyance action. Defendants request that I dismiss Count II of the Complaint because Plaintiff has not sufficiently alleged lack of reasonably equivalent value for three reasons: (i) the Complaint does not contain allegations that the Fee was not market value for services provided, (ii) the use of the term loan proceeds to pay the Dividend cannot form the basis for avoidance of the Fee (i.e. Plaintiff is focusing on the wrong transaction), and (iii) Plaintiff has not otherwise pled lack of reasonably equivalent value.

My job on a Rule 12(b)(6) motion is to review the complaint to determine whether the plaintiff has adequately pled facts sufficient to show that the plaintiff "has a 'plausible claim for relief.'"[7] In reviewing the complaint under Rule 12(b)(6), the court must first

---

[6] Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012.
[7] *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ, Inc.)*, No. 12–13398 (MFW), Adv. No. 14–51079 (MFW), 2016 WL 1599798, at *2 (Bankr. D. Del. Apr. 18, 2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Although detailed factual allegations are not required, the complaint must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (citation omitted).

4

accept all well-pled facts as true, but may disregard legal conclusions.[8] "A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action[] supported by mere conclusory statements . . . ."[10] Rather, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[11] A court draws on "its judicial experience and common sense" to determine if the complaint meets these requirements.[12] The moving party has the burden.[13]

### Discussion

**Actual Fraudulent Conveyance**

In Count I, Trustee seeks to avoid the payment of the Fee pursuant to § 548(a)(1)(A), which provides a trustee with the power to avoid any transfer made with actual intent to hinder, delay or defraud creditors.[14] To avoid a transfer, a plaintiff must show that a transfer of an interest in property was made by a debtor, within two years before the

---

[8] *See In re THQ, Inc.*, 2016 WL 1599798, at *2.
[9] *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, C.A. No. 14–874–SLR–SRF, 2015 WL 4036951, at *5 (D. Del. July 1, 2015) (citing *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56).
[10] *Iqbal*, 556 U.S. at 678.
[11] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).
[12] *In re THQ, Inc.*, 2016 WL 1599798, at *2 (quoting *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 35 (Bankr. D. Del. 2011)).
[13] *In re THQ, Inc.*, 2016 WL 1599798, at *2.
[14] 11 U.S.C. § 548(a)(1)(A).

bankruptcy, and with actual intent to hinder, delay or defraud creditors.[15] Intent of the transferor and not the transferee is what has to be established.[16]

A fraudulent transfer claim has to be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b) made applicable by Federal Rule of Bankruptcy Procedure 7009.[17] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[18] Allegations of "date, place or time" fulfill the requirement to plead the circumstances constituting fraud or mistake with particularity, though plaintiffs are free to use alternative means to "inject[] precision and some measure of substantiation into their allegations of fraud."[19] Fraudulent intent, however, may be pled generally.[20] Moreover, in general, "[t]he requirements of Rule 9(b)

---

[15] *Id.*; *Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 550 (D. Del. 2005). The test is disjunctive, i.e. the necessary intent can be an intent to hinder, an intent to delay or an intent to defraud such that a showing of any of these states of mind is sufficient to establish the requisite intent. *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), Adv. No. 10-51389 (BLS), 2016 WL 1165634, at *4 (Bankr. D. Del. Feb. 8, 2016).

[16] *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 198 (Bankr. D.N.J. 2006) (citing *Schaps v. Just Enough Corp. (In re Pinto Trucking Serv., Inc.)*, 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988)).

[17] *Official Comm. of Unsecured Creditors of Fedders North Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders North Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009).

[18] Fed. R. Civ. P. 9(b).

[19] *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[20] Because I find that I can reasonably infer intent, I need not determine whether this aspect of a fraudulent conveyance need only meet the requirements of Rule 8. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1301 (4th ed. 2018) ("Unfortunately, the trend seems to be an embrace of the more rigid pleading requirements for conditions of mind that the second sentence of Rule 9(b) was designed to suppress."). *Charys Liquidating Trust v. Growth Mgmt., LLC (In re Charys Holding Co., Inc.)*, No. 08-10289, Adv. No. 10-50204, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010) ("Badges of fraud have historically been used to show fraudulent intent, which may be pled generally under Rule 9(b)."); *Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, No. 16-10202 (KG), Adv. No. 17-50662 (KG), 2018 WL 2759301, at * 6 (Bankr. D. Del. June 6, 2018) ("Fed. R. Civ. P. Rule 9(b) requires the moving party to state with particularity the circumstances constituting fraud, excluding malice, intent or knowledge, which may be averred generally.").

are relaxed and interpreted liberally" where the plaintiff is a trustee and not the debtor itself.[21]

Defendants' argument that Plaintiff has not adequately pled the confluence of badges of fraud is a challenge to Plaintiff's pleading of intent. Actual intent to defraud is usually not susceptible to direct evidence; courts therefore may rely on circumstantial evidence to infer such intent.[22] This circumstantial evidence often takes the form of badges of fraud.[23] But, badges of fraud is just one substitute for direct evidence. A court may consider factors other than badges of fraud in its analysis.[24] For example, "[i]f the 'natural consequence' of a debtor's action" is to hinder, delay or defraud creditors, a court may infer an intentional fraudulent conveyance.[25]

While I agree with Defendants that Plaintiff has not sufficiently alleged a confluence of badges of fraud,[26] taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, I conclude that Plaintiff has adequately pled intent to hinder, delay or defraud creditors in the incurrence of the obligation to pay the Fee, and perhaps in the payment of the Fee itself. Specifically, I point to the following:

- Millennium's entire business model was based on practices that violated the Stark Law and the Anti-Kickback Statute. Complaint ¶¶ 36, 37. The details of the illegal

---

[21] *In re Fedders North Am., Inc.*, 405 B.R. at 544; *see Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 574 B.R. 446, 465 (Bankr. D. Del. 2017).
[22] *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *4.
[23] *Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504, 509 (Bankr. D. Del. 2012); *In re Charys Holding Co., Inc.*, 2010 WL 2774852, at *3.
[24] *In re Tribune Co.*, 464 B.R. 126, 162 (Bankr. D. Del. 2011).
[25] *Id.* (citing *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1305 (3d Cir.1986)); *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *6 ("The [d]ebtors are presumed to intend the natural consequences of their acts.").
[26] Plaintiff has at most alleged two badges of fraud—inadequacy of the consideration and insolvency (which was not contested on this motion). The Complaint is devoid of allegations that Defendants were insiders and Plaintiff concedes that the transfer was not secret or concealed. I am also not persuaded by Plaintiff's one paragraph discussion of the rest of the badges of fraud.

sales and marketing practices are set out in, among other places, paragraphs 37 through 39 of the Complaint.

- The legality of Millennium's business was being challenged on several fronts and in multiple courts, including by the United States Department of Justice, various qui tam relators, and a competitor, Ameritox, Ltd. Complaint ¶¶ 34, 35, 40.

- The illegality of the business model meant that Millennium's revenues were overstated. Complaint ¶¶ 53, 58.

- Millennium was aware that its Rating Agency Presentation, necessary to obtain and/or syndicate the $1.775 billion term loan, did not disclose the above challenges to Millennium's business model and that information disseminated in connection with the loan, generally and to investors, was untruthful. Complaint ¶¶ 49, 50, 56.[27]

- Notwithstanding the challenges to Millennium's business model, the focus of the Controlling Persons in February 2014 was on a huge institutional financing that would take out the $304 million existing debt and leave $1.2 billion for a distribution to themselves, leaving no funds for working capital. Complaint ¶¶ 47, 51.

- The Controlling Persons were as focused on the improvement of their personal fortunes and those of their families as on the effect of the 2014 Transaction on the company and its creditors. Complaint ¶ 71.

- The consummation of the 2014 Transaction, including the concurrent siphoning of most of the loan proceeds away from Millennium and into the hands of the Controlling Persons, left Millennium unable to satisfy the claims asserted against it by the government and others and to pay the obligations incurred in the 2014 Transaction. Complaint ¶ 99.

Defendants counter, drawing inferences from other facts alleged in the Complaint, that Millennium's advisors did not believe the challenges to Millennium's business practices were significant enough to negatively affect Millennium and, thus, Millennium did not have the requisite intent.

---

[27] Defendants' second argument for dismissing Count I—that misstatements or omissions in the marketing materials for the term loan cannot form the basis for an actual fraudulent conveyance is true as far as it goes. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016) ("As a basic point, fraudulent conveyances are not an inducement-based fraud."). But, this does not mean that allegations of misstatements in marketing materials together with other allegations cannot form the basis of a fraudulent conveyance claim. Here, there are other allegations.

I conclude that the allegations in the Complaint are sufficiently detailed for pleading purposes. Seeking to maximize amounts paid to the Controlling Persons to improve their personal fortunes may evidence an intent to hinder, delay or defraud creditors and may show motivation to engage Defendants (and thus incur the obligation to pay the Fee) in order to obtain the term loan proceeds to award the Dividend. Further, Millennium's assessment of the litigation prospects relative to the magnitude of the 2014 Transaction may also evidence an intentional fraudulent transfer. Other allegations in the Complaint, such as the advice provided by certain of Millennium's advisors, may ultimately tend to disprove Plaintiff's case, but these statements do not directly contradict or completely negate the above allegations.[28] I will not dismiss the Complaint on this ground.[29]

**Constructive Fraudulent Conveyance**

Plaintiff also seeks to avoid the transfer of Millennium's property—the Fee—under the Bankruptcy Code's constructive fraudulent conveyance statute, § 548(a)(1)(B). Unlike an actual fraudulent conveyance, stating a claim for a constructive fraudulent conveyance

---

[28] As suggested at argument, Trustee may have better edited his Complaint, see Hr'g Tr. 48 (Dkt. No. 48), which appears to be taken directly from, if not cut and pasted from, the complaint filed by Mr. Kirschner as trustee of the Millennium Lender Claim Trust (also created under the Plan) in New York against Defendants and others. See *Kirschner v. J.P. Morgan Chase Bank, N.A.*, Index No. 655124/2017 (Sup. Ct. N.Y. County 2017) ("New York Action"). The New York Action is based upon alleged state law securities violations for, among other things, the non-disclosures discussed above and detailed in the Complaint.

[29] See *In re Syntax-Brillian Corp.*, 2016 WL 1165634 (court ruling that plaintiff plausibly stated a claim for actual fraud where insiders of the debtors incurred obligations to their bank while they were generating fake credit memos and recording fake sales and might have also been incentivized to incur the obligations because they benefited personally from debtors' continued operations); *Perkins v. Parise (In re Global Trading Invs. LLC)*, No. 04-41297 (RG), Adv. No. 05-1332 RTL, 2006 WL 3040918, at *7 (Bankr. D.N.J. Oct. 25, 2006) (quoting *Universal Clearing House Co. v. Abbott (In re Indep. Clearing House)*, 77 B.R. 843, 860 (D. Utah 1987)) (an actual intent to defraud can be inferred from the debtor's active participation in an illegal business, i.e. a Ponzi scheme; such intent is obvious because one cannot run a Ponzi scheme forever since the investor pool is not an unlimited resource); *Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*, 386 B.R. 37, 51 (Bankr. D. Del. 2008) (act of seeking a priority claim may evidence an intentional fraudulent conveyance).

9

does not require a showing of intent. To establish a constructive fraudulent conveyance, the movant—by a preponderance of the evidence—has to show that the alleged transfer involved the debtor's interest in property, the transfer took place within two years of filing for bankruptcy, the transfer caused the debtor to be insolvent or the debtor was insolvent at the time of the transfer, and, lastly, the debtor did not receive any value or the value received was not reasonably equivalent to the value of the property given. The Motion to Dismiss Count II is based only on the position that Plaintiff has not sufficiently pled lack of reasonably equivalent value. Accordingly, I need not discuss the remaining factors.

The Bankruptcy Code does not define the term "reasonably equivalent value." "[T]he Third Circuit has noted that 'a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"[30] To determine if Millennium received reasonably equivalent value, courts do a two-part inquiry: (i) "whether the debtor received any value [for the transfer] at all," and (ii) if so, whether that value was "reasonably equivalent" to the value of the transfer.[31] To survive a motion to dismiss, Plaintiff does not have to meet the heightened standard of Rule 9(b), however, he has to do more than parrot the statutory elements of § 548(b)(1)(B).[32] In other words, Plaintiff has to provide Defendants with fair notice of the charges against them.[33]

---

[30] *Charys Liquidating Trust v. Hades Advisors, LLC (In re Charys Holding Co.)*, No. 08–10289, Adv. No. 10–50211, 2010 WL 2788152, at *7 (Bankr. D. Del. July 14, 2010) (quoting *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007)).
[31] *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 149, 152 (3d Cir. 1996) ("*R.M.L.*").
[32] *See Miller v. Welke (In re United Tax Grp., LLC)*, No. 14–10486 (LSS), Adv. No. 16-50088 (LSS), 2016 WL 7235622, at *3 (Bankr. D. Del. Dec. 13, 2016).
[33] *Stanziale v. Brown–Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 856 (Bankr. D. Del. 2018).

As stated above, Defendants make three arguments: (i) the Complaint contains no allegations that the Fee was not market value for services provided; (ii) Defendants wrongly focus on the Dividend payment as the underlying basis for the avoidance of the Fee; and (iii) Plaintiff has not otherwise pled lack of reasonably equivalent value.

As to failure to plead that the Fee was not market value, Defendants are correct. Nowhere in the Complaint does Plaintiff allege that the Fee was not market value. However, that is not definitive. In *R.M.L.*, the Third Circuit examined the bankruptcy court's conclusion that a debtor's payment of a facility fee to its bank did not confer reasonably equivalent value on the debtor because the commitment letter was so conditional that the debtor had little chance of obtaining the loan. The Third Circuit specifically found no conflict between that conclusion and the bankruptcy court's observation that the commitment fee was market rate.[34] Thus, a payment to a bank of a market-based fee is not equivalent to a receipt of value. As in *R.M.L.*, it is possible, based on specific circumstances, that the existence of market-based fee is not case-dispositive. While Defendants attempt to distinguish *R.M.L.* on its facts and point to the fee letter and the commitment letter, both of which are referenced in the Complaint (though perhaps not relied upon) and speak to services to be performed by Defendants and/or affiliated entities, this response simply raises a factual issue, not to be decided on a motion to dismiss.

What Plaintiff does allege in the Complaint is as follows:

- The Controlling Persons caused Millennium to agree to pay such Fees in order to obtain the extraordinary dividend and unwarranted bonuses and stock option cancellation consideration. Complaint ¶ 72.

---

[34] *In re R.M.L., Inc.*, 92 F.3d at 153-54.

- Millennium got very little of value in exchange for agreeing to pay, and for paying the Fees. Incurring the obligation to pay, and paying the Fees, was essential to the consummation of the 2014 Transaction, which severely damaged Millennium and ultimately caused it to file bankruptcy. Had the Fees neither been agreed nor paid, the 2014 Transaction would not have occurred. Complaint ¶ 85.

- The consummation of the 2014 Transaction, including the concurrent siphoning of most of the loan proceeds away from Millennium and into the hands of the Controlling Persons, left Millennium unable to satisfy the claims asserted against it by the government and the other parties seeking relief for its abusive practices, and to pay the obligations incurred in the 2014 Transaction. Complaint ¶ 86.

Again, taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has placed Defendants on notice of his theory of the case— Millennium did not receive value reasonably equivalent to the Fee it obligated itself to pay and paid in the 2014 Transaction because at the end of the day, the 2014 Transaction provided no value to Millennium. Whether this is true, or not, is not a decision for today.

Defendants also question the propriety of judging the value given in exchange for the Fee in the context of the 2014 Transaction. Defendants state that to do so is an improper use of the collapsing doctrine. Plaintiff takes the position that use of the collapsing doctrine is unnecessary, but in any event, Plaintiff meets the requisites for its use.

The Third Circuit has recognized the collapsing doctrine in the context of assessing a defendant's liability on a fraudulent transfer claim.[35] In *Tabor*, the Third Circuit "explained that where a series of transactions were all 'part of one integrated transaction,' a court could look 'beyond the exchange of funds' in one transaction and consider the '*aggregate*

---

[35] *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*, No. 08–11006 (BLS), Adv. No. 08-51903, 2011 WL 4345204, at *4 (Bankr. D. Del. Sept. 15, 2011).

transaction.'"[36] A leveraged buyout (LBO) transaction is the archetypical transaction in which the collapsing doctrine is employed by the courts.

To determine whether the collapsing doctrine should be applied to a series of transactions, courts look to the substance rather than to the form of the transactions.[37] In other words, the court focuses on the overall financial consequences of the transactions and how they impact creditors.[38] Courts consider three factors in their analysis. "First, whether all of the parties involved had knowledge of the multiple transactions. Second, whether each transaction would have occurred on its own. And third, whether each transaction was dependent or conditioned on other transactions."[39]

Assuming the need to use the collapsing doctrine,[40] Trustee has pled sufficient facts to demonstrate that incurring the obligation to pay and/or payment of the Fee may be a proper transfer to collapse with the loan of funds and the payment of the Dividend. Trustee does not need to prove his case at this time. Rather, the question is whether Trustee is entitled to develop and present evidence to support his claim that the separate transfers are part of one transaction that may be considered in the aggregate to establish Defendants' fraudulent transfer liability.[41] I conclude that Trustee is so entitled.[42]

---

[36] *In re Jevic Holding Corp.*, 2011 WL 4345204, at *4 (citing *Tabor*, 803 F.2d at 1300, 1302).

[37] *In re Jevic Holding Corp.*, 2011 WL 4345204, at *5.

[38] *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 497 (Bankr. D. Del. 2010).

[39] *Id.* (citing *In re Hechinger Inv. Co. of Del.*, 327 B.R. at 546-47); *In re Jevic Holding Corp.*, 2011 WL 4345204, at *5. *See also Brown v. Gen. Electric Capital Corp. (In re Foxmeyer Corp.)*, 286 B.R. 546, 573-74 (Bankr. D. Del. 2002) (discussing the step transaction doctrine, the end result test and the interdependence test, all variations of the integration doctrine).

[40] As discussed at argument, the 2014 Transaction, which included the payment of the Fee, may simply be one transaction.

[41] *See In re Jevic Holding Corp.*, 2011 WL 4345204, at *7.

[42] Defendants' counsel appears to concede that the factors for application of the collapsing doctrine have been met or that this is simply one transaction. Hr'g Tr. 29.

At argument, Defendants' counsel suggested that the purpose behind considering the transfers as one transaction fails here.[43] Specifically, counsel argued that the collapsing doctrine, and perhaps a fraudulent conveyance action, generally, should not be brought for the benefit of parties to the challenged transactions. Counsel pointed out that the initial beneficiaries of the Corporate Trust were the lenders to whom the term loan was syndicated, not unrelated unsecured creditors. He argued such parties should not be able to recover on a fraudulent conveyance theory. Similarly, I questioned whether Trustee can seek to avoid the Fee on a theory that it was part of the 2014 Transaction when he does not seek to avoid the obligations which form the basis of the term loan.[44] I also questioned the proper remedy given the New York Action. These and other potential defenses were not the subject of the Motion to Dismiss. I will not consider these arguments until, if ever, they are properly before me and I have the benefit of briefing.

Trustee has adequately pled lack of reasonably equivalent value. The Motion to Dismiss Count II is denied.

**The Adversary Proceeding Will Not Be Stayed**

Defendants alternatively ask that I stay the adversary proceeding in favor of the New York Action if the Motion to Dismiss is denied. Defendants argue that if the plaintiff in the New York Action succeeds on his claims there, § 546(e) (the safe harbor provision) will provide Defendants with a complete defense to this action. In other words, Defendants argue that if the term loan was found to be a security, the Fee would constitute transfers made in connection with a securities contract and thus safe from avoidance. Plaintiff

---

[43] Hr'g Tr. 29-31.
[44] Under the Plan, the Controlling Persons were released from liability. Complaint ¶ 23.

14

counters with multiple arguments, including that the premise of Defendants' position is incorrect in that, in the New York Action, it need not be proven that the loan itself is a security, only the syndication of it; the New York Action addresses state Blue Sky laws, not what constitutes a security under federal law; and the outcome of the New York Action would not affect my analysis of § 546(e). Needless to say, Defendants contest that any part of the 2014 Transaction constituted the issuance of a security.

There might be some efficiencies in staying this action (an argument Defendants did not make), but I will not stay it on the strength of a potential defense that may be raised if the plaintiff in the New York Action is successful. That case is also in its infancy, and it appears that both should proceed on their separate tracks.

## Conclusion

For the reasons set forth above, the Motion to Dismiss is denied. An order will enter.

Dated: February 28, 2019
Wilmington, Delaware

*[signature]*
The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge