# **EXHIBIT G**

RLF1 28568147v.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MILLENNIUM LAB HOLDINGS II, LLC, *et al.*, | Case No. 15-12284 (LSS) |
| Debtors. | Jointly Administered |
| MARC S. KIRSCHNER solely in his capacity as TRUSTEE OF THE MILLENNIUM CORPORATE CLAIM TRUST, | |
| Plaintiff, | Adv. Pro. No. 17-51840 (LSS) |
| v. | **Re: Adv. D.I. 253, 254, 257** |
| J.P. MORGAN CHASE BANK, N.A., CITIBANK N.A., BMO HARRIS BANK, N.A., and SUNTRUST BANK, | |
| Defendants. | |

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION TO
### EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT BRANKA MATEVICH

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700

-and-

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700

-and-

*List of Counsel Continued on Next Page*

Adv. D.I. 283
Filed: 10/24/22

Christopher Michael Viapiano
Oliver W. Engebretson-Schooley
Julie G. Petiford
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006-5215
Telephone: (202) 956-7500

-and-

Ann-Elizabeth Ostrager
Mark A. Popovsky
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000

*Attorneys for JPMorgan Chase Bank, N.A.*

POLSINELLI PC
Christopher A. Ward (No. 3877)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920

-and-

Stephen Mark Dollar
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3000

*Attorneys for BMO Harris Bank, N.A.*

Benjamin S. Kaminetzky
Lara Samet Buchwald
Tina Hwa Joe
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000

*Attorneys for Citibank, N.A.*

MORRIS JAMES LLP
Stephen M. Miller (No. 2610)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6853

-and-

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2191

-and-

John C. Toro
Paige Nobles Clifton
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 572-2806

*Attorneys for SunTrust Bank*

October 24, 2022

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

BACKGROUND ..............................................................................................................3

LEGAL STANDARD.......................................................................................................7

ARGUMENT ...................................................................................................................8

I.      MATEVICH IS QUALIFIED TO OPINE ON CUSTOMARY PRACTICE IN THE URINE DRUG TESTING INDUSTRY. ......................................................8

II.     PLAINTIFF FAILS TO SHOW THAT ANY OF MATEVICH'S OPINIONS ARE UNRELIABLE. ..............................................................................................12

      A.      Plaintiff's Contention That Matevich's Opinions Are Unreliable and Unsupported Is Based on Mischaracterizations of Her Report and Testimony. ..................................................................................................12

      B.      Plaintiff Improperly Seeks To Exclude Matevich's Testimony Based on Arguments Addressed to Weight Rather Than Admissibility. ...............15

            1.      Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Local Coverage Determination Adjustment Is Inadmissible. ..................................................................................16

            2.      Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Commercial Payor Custom Profile Adjustment Is Inadmissible. ..................................................................................18

            3.      Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Medically Unlikely Edit Adjustment Is Inadmissible. .................20

            4.      Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Specimen Volume Growth Rate Adjustment Is Inadmissible. ..................................................................................22

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360Heros, Inc.* v. *GoPro, Inc.*,
569 F. Supp. 3d 198 (D. Del. 2021)................................................................................10

*Aviva Sports, Inc.* v. *Fingerhut Direct Mktg., Inc.*,
829 F. Supp. 2d 802 (D. Minn. 2011).......................................................................14, 21

*C R Bard, Inc.* v. *AngioDynamics Inc.*,
2018 WL 3130622 (D. Del. June 26, 2018)..............................................................15, 16

*Cantor* v. *Perelman*,
2006 WL 3462596 (D. Del. Nov. 30, 2006) ...................................................................13

*Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*,
546 F. Supp. 2d 155 (D.N.J. 2008) .................................................................................23

*Geis* v. *Tricam Indus., Inc.*,
2010 WL 8591142 (D.N.J. Oct. 6, 2010)..................................................................17, 18

*Grayiel* v. *AIO Holdings, LLC*,
2019 WL 2372901 (W.D. Ky. Mar. 15, 2019) .........................................................11, 12

*Hammond* v. *Int'l Harvester Co.*,
691 F.2d 646 (3d Cir. 1982)..............................................................................................9

*Helios Software, LLC* v. *Awareness Techs., Inc.*,
2015 WL 12806482 (D. Del. Apr. 13, 2015)...................................................................17

*Int'l Constr. Prods., LLC* v. *Caterpillar Inc.*,
2022 WL 4465376 (D. Del. Sept. 26, 2022)..........................................................16, 21, 22

*Karlo* v. *Pittsburgh Glass Works, LLC*,
849 F.3d 61 (3d Cir. 2017)................................................................................................8

*MiiCs & Partners, Inc.* v. *Funai Elec. Co.*,
2017 WL 6268072 (D. Del. Dec. 7, 2017).......................................................................20

*Padillas* v. *Stork-Gamco, Inc.*,
186 F.3d 412 (3d Cir. 1999)..............................................................................................8

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)...................................................................................8, 10, 15

*Pineda* v. *Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008)....................................................................................9, 10, 11

*Schneider* v. *Fried*,
    320 F.3d 396 (3d Cir. 2003)..................................................................................................7

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)..................................................................................................7

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2016 WL 4056026 (E.D. Pa. July 27, 2016)......................................................................18

*Waldorf* v. *Shuta*,
    142 F.3d 601 (3d Cir. 1998).........................................................................8, 9, 10, 11

*Warren Hill, LLC* v. *Neptune Invs., LLC*,
    2021 WL 2044389, at *7 (E.D. Pa. May 20, 2021)  .........................................................24

*Winn-Dixie Stores, Inc.* v. *E. Mushroom Mktg. Coop.*,
    2021 WL 2352016 (E.D. Pa. June 9, 2021)...........................................................13, 15, 17

**Rules**

Federal Rule of Evidence 702...................................................................................7, 15

## NATURE AND STAGE OF PROCEEDINGS

Defendants submit this memorandum in opposition to Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Expert Branka Matevich.  (D.I. 254 ("Matevich MTE").)[1]

## SUMMARY OF ARGUMENT

Plaintiff must prove that the $1.775-billion syndicated term loan extended to Millennium in April 2014 (the "2014 Transaction") rendered Millennium insolvent.  To meet this burden, Plaintiff relies on the expert testimony of Yvette Austin Smith, who provided an opinion regarding Millennium's valuation and solvency.  In arriving at her conclusion that Millennium was rendered insolvent by the 2014 Transaction, Austin Smith took the revenue projections created by Millennium's management in March 2014 ("Management Projections") and reduced them by more than $1 billion over five years.  Austin Smith did this by applying a series of "adjustments," purportedly to account for the "business, reimbursement, legal, and regulatory risks and exposures" that Millennium faced operating in the urine drug testing industry.  (D.I. 252-64 ("Austin Smith Report") ¶ 106.)

To address the assumptions about the clinical laboratory services industry in Austin Smith's adjustments to the Management Projections, Defendants introduced rebuttal expert testimony from Branka Matevich.  Matevich has over 40 years of experience in the clinical laboratory services industry, including as Director of Strategy and Solutions at Quest Diagnostics, one of the largest laboratory services companies in the country, and in urine drug testing ("UDT"), Millennium's core business.  Relying on her experience, Matevich analyzed Austin Smith's assumptions about the industry and how drug testing companies operate.  Matevich explained that

---

[1] Further information regarding the nature and stage of these proceedings can be found in the *Memorandum of Law in Support of Defendants' Motion for Summary Judgment*, D.I. 251, filed on August 22, 2022.

Austin Smith repeatedly made assumptions that were inconsistent with industry circumstances and expectations at the time, or reflected an incorrect or incomplete understanding of regulatory and business processes in the industry.

Plaintiff now moves to exclude Matevich's opinion in its entirety on two principal grounds. *First*, Plaintiff protests that Matevich is not qualified to offer a solvency opinion. But Matevich did not offer any opinion about Millennium's solvency. Instead, she provided an opinion concerning the assumptions about industry practices and expectations that Austin Smith relied on in her report. Plaintiff further claims that Matevich should be precluded from testifying about the industry assumptions Austin Smith made because, according to Plaintiff, Matevich lacks expertise in the practices and expectations of the very industry where she has spent her more than four-decade career (and in which, by contrast, Austin Smith has no experience).

*Second*, Plaintiff argues that Matevich's opinions should be excluded because they are unreliable and not based on sufficient facts. But, to arrive at this conclusion, Plaintiff repeatedly mischaracterizes Matevich's opinions, incorrectly claiming that she offered affirmative opinions about what the Management Projections should have been (when she did not), and then attempts to fault her for not explaining her methodology for such projections. The rest of Plaintiff's arguments all boil down to assertions that the Court should credit Austin Smith's opinions over Matevich's opinions. But such arguments concern only the proper *weight* to be given to each expert's opinions, and thus amount to nothing more than an impermissible reply expert report, not a basis to *exclude* Matevich's testimony. For these reasons, the Court should deny Plaintiff's Motion.

## BACKGROUND[2]

On November 15, 2021, Plaintiff served the Rule 26(a)(2) Report of Yvette R. Austin Smith. (D.I. 252-64.) In that Report, Austin Smith—Principal and Chairman of The Brattle Group (a litigation consulting firm)—made a series of modifications to the Management Projections, the contemporaneous financial projections that Millennium's management prepared in advance of the 2014 Transaction. In the aggregate, Austin Smith's adjustments reduced Millennium's projected revenues by at least $1 billion over five years, a reduction of approximately 50 percent. Austin Smith then relied on her modified version of the Management Projections to opine that the 2014 Transaction rendered Millennium insolvent.[3]

Branka Matevich, a veteran of the clinical laboratory services industry, prepared an expert report rebutting a series of assumptions made (but not supported) in Austin Smith's report regarding how companies operate in the clinical drug testing space. (D.I. 254-3 ("Matevich Report") ¶ 6.) Matevich has "over 40 years of professional experience with clinical laboratories," including in "business, strategy/planning, financial, technical, and operational roles." (*Id.* ¶ 1.) Over her career, Matevich worked for numerous drug testing companies, including Quest, "one of the largest laboratory services providers in the United States." (*Id.* ¶ 2.) Her responsibilities have included "laboratory management, quality assurance, new test development, laboratory inspection" and "testing and billing." (*Id.* ¶ 4.) Most recently, she was the CEO of US Medical

---

[2]    As Defendants explain in their opposition to Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Expert Amy Hutton, Plaintiff has drafted a "statement of facts" that is both improper and incorrect. (Matevich MTE at 5-10.) Defendants address several of the more egregious inaccuracies contained therein in their separate opposition brief filed concurrently. Defendants here provide only the background that is necessary for the Court to resolve this motion.

[3]    A more complete description of Austin Smith's report can be found in *Defendants' Memorandum of Law in Support of Their Motion to Strike Certain Portions of the Rule 26(a)(2) Report of Yvette Austin Smith*, D.I. 249, filed on August 22, 2022.

Scientific Indiana, also a clinical laboratory services business. (*Id.* ¶ 2.) She served for ten years as the Director of Business Development at ACL Laboratories, another drug testing company, and held business and operational roles at several other laboratory services companies for the nearly two decades prior. (Matevich Report, App'x A at 2.) Currently, she runs her own clinical laboratory consulting firm. (*Id.*, App'x A at 1.) Through these professional experiences, Matevich learned "the ins and outs of the [drug testing] industry beyond just testing," including "the climate [and] the opportunity for growth." (Ex. 6 (Matevich Dep. Tr.) at 35:4-7.)[4]

The Matevich Report is targeted in scope. Matevich neither opined on Austin Smith's valuation methodologies, nor purported to offer her own opinion on Millennium's solvency. Defendants separately offered the expert testimony of Dr. Amy Hutton, an accounting and finance professor, to address the core methodological problems with Austin Smith's solvency analysis. Matevich, as a rebuttal expert, examined the industry-specific assumptions underpinning several of Austin Smith's "adjustments" and explained why the assumptions made by Austin Smith—who has never worked in or received training in the healthcare industry[5]—"rely on misunderstandings and mischaracterizations of the laboratory services industry, and are inconsistent with [Matevich's] experience preparing financial projections for laboratory services companies." (Matevich Report ¶ 8.) Specifically, Matevich examined four of Austin Smith's industry adjustments.

---

[4]    Citations in the format "Ex. [_]" refer to the exhibits to the Declaration of Mark A. Popovsky in Support of Defendants' Opposition to Plaintiff's Motions to Exclude the Testimony of Amy Hutton and Branka Matevich, filed contemporaneously herewith.

[5]    *See, e.g.*, D.I. 252-60 (Austin Smith Dep. Tr.) at 46:6-47:20 (no expertise in "urine and drug testing industry," "medical billing," or "Medicare reimbursement[s]"); 184:19-23 (no experience "analyzing medically unlikely edits" ("MUEs")); 185:13-17 (no experience with CMS guidance or regulations concerning MUEs); 220:8-25 (no experience with local coverage determinations).

***Specimen Volume Growth Rate Adjustment.*** Austin Smith substantially lowered all of Millennium management's specimen volume growth rate projections based on her own belief that those projections were "inconsistent with Millennium's historical trends" and "broader" trends in the UDT industry. (Austin Smith Report ¶¶ 108-09.) Matevich rebutted this, explaining that Austin Smith "arbitrarily cho[se] alternative growth rates" without providing any replicable method, instead "focus[ing] on a single quarter of Medicare volume growth [and] ignoring the rest of Millennium's historical growth data"; relied on "an inapt comparison to laboratory industry growth rates drawn from analyst reports" concerning companies that are "not sufficiently comparable to Millennium"; reflected a narrow understanding of industry expectations in 2014 that "ignore[d] information available at the time pointing to the likelihood of continued growth in the UDT industry"; and failed to account for "differences between Millennium's and its competitors' service offerings and capabilities." (Matevich Report ¶¶ 21-41.)

***Commercial Payor Custom Profile Adjustment.*** Until Millennium transitioned away from the practice in March 2015, Millennium offered physicians "Custom Profiles" that allowed its physician customers to select a default set of tests that they most commonly ordered in order to "help facilitate the ordering process," and avoid the physicians "having to fill out the entire requisition every time." (*See* D.I. 252-37 (Pencak Dep. Tr.) at 50:18-51:2.) Austin Smith made downward adjustments to management's net revenue per specimen ("NRPS") projection for commercial payors purportedly to account for the "likely discontinuance of Custom Profiles" as of April 2014. (Austin Smith Report ¶¶ 124-30.) Austin Smith based this adjustment on her speculation that the codes billed by Millennium, but not by two of its competitors, Aegis and Ameritox, must be for medically unnecessary tests. (*Id.*) In her rebuttal report, Matevich explained that Austin Smith assumed without support that (i) Aegis and Ameritox would be the

only relevant competitors for such an analysis, (ii) codes billed only by Millennium must be for medically unnecessary tests, and (iii) any testing ordered by physicians in connection with these codes would not have been ordered but for the use of custom profiles.  (Matevich Report ¶¶ 47-57.)  Moreover, Austin Smith relied, without adequate justification, on Medicare data to formulate her adjustment to commercial payor NRPS.  (*Id.* ¶¶ 47-48.)

*Medically Unlikely Edit Adjustment.*  As part of the claims review process, Medicare administrators impose limits on the number of tests that can be submitted for specific codes, and they adjust or deny claims—called medically unlikely edits or "MUEs"—when the claims exceed those thresholds.  Austin Smith adjusted downward management's Medicare NRPS "to reflect the impact of MUE claim denials" resulting from certain codes that were "converted" to a more restrictive threshold limit.  (Austin Smith Report ¶¶ 110-19.)  Matevich opined that Austin Smith assumed adverse impacts from MUE denials based on hindsight and without appreciating the complexities of the MUE process.  (Matevich Report ¶¶ 58-68.)  Specifically, Matevich explained that MUE denials "c[an] be reviewed and reversed" (*id.* ¶ 63), and that laboratory testing companies will typically adjust their billing practices "to ensure that MUE limits are not breached in future claims" (*id.* ¶ 68).  Austin Smith never acknowledged these considerations in her report, and instead assumed that Millennium would continue to submit claims over the permissible thresholds "in perpetuity," despite knowing that they would be denied.  (*Id.*)

*Local Coverage Determination Adjustment.*  Austin Smith further adjusted downward management's Medicare NRPS, purportedly to account for changes in testing coverage in a Local Coverage Determination ("LCD"), guidance issued by Medicare claims administrators "that limit[s] [Medicare] coverage for a particular item or service in their jurisdictions."  (Matevich Report ¶ 69.)  Specifically, Austin Smith applied an adjustment based on her interpretation of

guidance in an LCD that defined "coverage for certain negative confirmation testing and specimen validity testing." (Austin Smith Report ¶ 123.)  Matevich explained that Austin Smith relied on a *draft* LCD to conduct her analysis, and failed to take into account the uncertainties throughout the process by which draft LCDs are proposed, revised and, in some cases, ultimately issued, as well as how physicians and clinical laboratories respond to newly issued LCD guidance.  (Matevich Report ¶¶ 73-79.)

In light of Austin Smith's errant assumptions about customary practice in the clinical laboratory testing industry, Matevich concluded that the adjustments to the Management Projections that Austin Smith made in reliance on these assumptions are improper.  Plaintiff's Motion seeks to exclude Matevich's testimony in its entirety.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 ("Rule 702") has "two major requirements" for the admission of expert testimony.  *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000).  *First*, the expert "must be qualified to express an expert opinion."  *Id.* The Third Circuit interprets this requirement "liberally," and "a broad range of knowledge, skills, and training" will suffice.  *Schneider* v. *Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). *Second*, "expert opinion must be reliable."  *In re TMI*, 193 F.3d at 664.  To determine whether expert testimony is reliable, courts in this Circuit are directed to focus on "principles and methodology, not on the conclusions generated by the principles and methodology."  *Id.*  at 665. The test "is not whether a particular [expert] opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research.  Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'"  *Id.* (quoting *Kannankeril* v. *Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

The proponent of the expert testimony bears the burden to establish admissibility by a preponderance of the evidence, *Padillas* v. *Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999), but "they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*[;] they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). A "merits standard of correctness" is "a higher bar than what Rule 702 demands" for expert testimony to be admissible. *Karlo* v. *Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017).

## ARGUMENT

Plaintiff moves to exclude on two principal grounds, neither of which is supported under the applicable legal standards. *First*, Plaintiff attacks Matevich's qualifications on the grounds that she lacks the necessary experience to render a solvency opinion. But Matevich is not testifying about Millennium's solvency; she is testifying about customary practices in the clinical laboratory services industry. Matevich's over-40 years of experience in that industry, including her role as Director of Strategy and Solutions at Quest, one of the largest laboratory services companies in the country, is more than sufficient to qualify her to testify about how the industry operates. *Second*, Plaintiff challenges each of Matevich's opinions on the basis that they are unreliable and should be excluded. But all of Plaintiff's arguments, even assuming they are credible, would go only to the weight that the trier of fact should afford aspects of Matevich's opinions, and are not grounds for the wholesale exclusion of Matevich's testimony.

## I.     MATEVICH IS QUALIFIED TO OPINE ON CUSTOMARY PRACTICE IN THE URINE DRUG TESTING INDUSTRY.

Plaintiff's assertion that Matevich "is not an expert on the areas on which she offers opinions" is baseless. (Matevich MTE at 12.) To qualify as an expert under Rule 702, a witness

must have "'specialized knowledge' regarding the area of testimony." *Waldorf* v. *Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (citation omitted). A "broad range of knowledge, skills, and training" will suffice to qualify an expert, *Pineda* v. *Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008), including "[p]ractical experience" in the industry about which the expert is testifying, *Hammond* v. *Int'l Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982).

Matevich unquestionably qualifies under the Third Circuit's "liberal[]" standard for "interpret[ing] Rule 702's qualification requirement." *Pineda*, 520 F.3d at 244. Matevich has over 40 years of professional experience working with clinical laboratories, including in financial planning and strategy roles that "required [her] to take into account market pressures [and] the expected impact of regulatory, reimbursement, and scientific changes." (Matevich Report ¶ 3.) During her multi-decade career in the laboratory services industry, Matevich served as the Director of Strategy and Solutions for one of the largest laboratory services providers in the country. (*Id.* ¶ 2.) In that role, she examined growth opportunities for urine drug testing, Millennium's primary business (Ex. 6 (Matevich Dep. Tr.) at 35:8-16), analyzed the potential impacts of LCDs on strategic plans (D.I. 254-4 (Matevich Dep. Tr.) at 157:5-158:17), examined MUE denials (Ex. 6 (Matevich Dep. Tr.) at 214:5-20, 222:11-223:25), analyzed custom profile usage (*id.* at 245:2-25), and engaged in numerous other projects related to sales, operations, and compliance (*see* Matevich Report App'x A at 1). Prior to that, she served in a similar role for over a decade at ACL Laboratories, another laboratory services company, and held numerous other roles at similar companies for several decades before that. (*Id.*, App'x A at 2.) Most recently, prior to starting her own clinical laboratory consulting firm, she was the CEO of a clinical laboratory that focused primarily on urine drug testing. (*Id.*, App'x A at 1; D.I. 254-4 (Matevich Dep. Tr.) at 165:8-16).)

Her formal qualifications to be an expert witness on the laboratory services industry are, in short, "unassailable." *Pineda*, 520 F.3d at 245.

Plaintiff makes no genuine effort to claim otherwise. Instead, he attempts to distract from Matevich's extensive industry experience by fixating on specific activities that he insists are required. Plaintiff contends, for example, that Matevich is unqualified to render her opinions on Austin Smith's assumptions about the laboratory services industry because she "has never published or presented regarding custom profiles or making financial projections in the UDT industry," "relied on others to review and analyze LCDs," and has not provided advice concerning the UDT industry in "*her current position* as a consultant." (Matevich MTE at 12 (emphasis added).)[6] Plaintiff has no authority supporting his assertion that these specific activities are required to be qualified as an expert. Rather, courts in this Circuit have repeatedly "eschewed imposing" such "overly rigorous requirements of expertise" and have, instead, "been satisfied with more generalized qualifications." *In re Paoli*, 35 F.3d at 741. For example, in *360Heros, Inc.* v. *GoPro, Inc.*, the district court denied a motion to exclude testimony from a "freelance producer" regarding "what types of 360 video camera rigs were available to and desirable to purchasers." 569 F. Supp. 3d 198, 202-03 (D. Del. 2021). Notwithstanding the producer's lack of formal engineering training, he was qualified as an expert based on his work experience, including shooting "360 video content," and being "active in the community of 360 video professionals." *Id.* And in *Shuta*, the Third Circuit affirmed the district court's determination that a "case

---

[6] Plaintiff's claim that Matevich "relied on others to review and analyze LCDs" (Matevich MTE at 12) mischaracterizes her testimony. In response to counsel's question about whether she was "personally involved with Quest's study, review, [and] analysis of the LCDs at [the] time," Matevich explained that, while members of compliance and legal "were responsible for performing the reviews," she "*worked on those teams*," and "had discussions around [the reviews] and made adjustments as needed to some of [their] strategic plans." (D.I. 254-4 (Matevich Dep. Tr.) at 157:25-158:12 (emphasis added).)

manager" and "social worker" with experience operating a nonprofit providing "services in the community to individuals with disabilit[ies]" was qualified to offer expert testimony regarding "vocational rehabilitation," despite his "lack of any formal training" and limited relevant "educational training."  143 F.3d at 626.  Testimony should not be excluded "simply because . . . the proposed expert does not have the specialization that [Plaintiff] considers most appropriate." *Pineda*, 520 F.3d at 245.

Unable to credibly dispute her credentials as an expert on the issues for which Matevich actually opines, Plaintiff next tries to dress Matevich's opinion up as something that it is not by arguing that Matevich "should not be allowed to provide opinions on *valuation* for which she is unqualified."  (Matevich MTE at 13 (emphasis added).)  But Matevich, a clinical laboratory industry expert, has offered no opinion on Millennium's value or how to go about determining Millennium's value.  (*See* D.I. 254-4 (Matevich Dep. Tr.) at 86:15-24 (stating that she did "not offer[] opinions about Millennium's solvency or Millennium's value" or whether the Management Projections "were . . . accurate and reliable").)[7]  She explicitly stated in her report that she examined Austin Smith's "improper assumptions and misunderstandings of the drug testing services industry."  (Matevich Report ¶ 10.)  Austin Smith erred by relying on these flawed assumptions and misunderstandings about the industry to conduct her solvency analysis, and an industry expert, like Matevich, is appropriate and qualified to "critique [Austin Smith's] valuation" "based on [her] experiences in the industry."  *Grayiel* v. *AIO Holdings, LLC*, 2019 WL 2372901, at *5-6 (W.D. Ky. Mar. 15, 2019) ("professional geologist" rebutting expert opinion valuing a gas

---

[7]    As discussed in Section II.A below, Plaintiff repeatedly mischaracterizes Matevich's opinions in an effort to support his Motion.  But these mischaracterizations, described in more detail below, are demonstrably incorrect and thus cannot provide a basis to exclude Matevich's opinion.

well in a fraudulent transfer case was qualified to "poke holes" in that opinion based on his "experiences in the industry and study in the field" and did not need "expertise in economic valuation" because his "testimony [wa]s offered to rebut the valuation provided by [the valuation expert], not to provide a value of the wells").

## II.   PLAINTIFF FAILS TO SHOW THAT ANY OF MATEVICH'S OPINIONS ARE UNRELIABLE.

Plaintiff also claims that Matevich's criticisms of Austin Smith's assumptions about the clinical laboratory industry are unreliable.  These arguments take two primary forms, neither of which has merit.  *First*, Plaintiff argues that each of Matevich's responses to Austin Smith's adjustments is unreliable because Matevich did not herself provide an alternative valuation methodology.  But this fundamentally mischaracterizes Matevich's opinion, which identified critical flaws in Austin Smith's assumptions and did not offer an affirmative valuation or projections that would require an independent methodology.  *Second*, Plaintiff claims that Matevich's opinion should be excluded because she did not consider other arguments or evidence that Plaintiff deems relevant.  Such arguments are not proper bases for excluding expert testimony under *Daubert*, and even if they were, Plaintiff's arguments are unsupported by the evidence that he cites.

### A.   Plaintiff's Contention That Matevich's Opinions Are Unreliable and Unsupported Is Based on Mischaracterizations of Her Report and Testimony.

Plaintiff advances a number of mischaracterizations of Matevich's opinions to challenge their reliability, as he did when attempting to dispute her qualifications.

*First*, Plaintiff wrongly claims that Matevich "opine[d] that Austin Smith should not have adjusted the [Management] Projections to account for the impact of the draft Noridian LCD." (Matevich MTE at 14.)  Based on this mischaracterization of Matevich's opinion, Plaintiff then complains that Matevich made "no attempt to apply a reliable standard for forecasting financial

-12-

projections for valuation purposes." (*Id.* at 16.)  But this criticism is unfounded because Matevich never opined whether the Management Projections were accurate or should have been adjusted to account for the potential impact of the draft Noridian LCD; rather, she explained that Austin Smith's Local Coverage Determination Adjustment "is based on an implicit and unfounded assumption" about how LCDs are adopted and implemented.  (Matevich Report ¶ 73.)  Matevich is a rebuttal expert, whose role is to "critique [Austin Smith's] methodologies" and "point out potential flaws" in her report.  *Winn-Dixie Stores, Inc.* v. *E. Mushroom Mktg. Coop.*, 2021 WL 2352016, at *14 (E.D. Pa. June 9, 2021).  As a rebuttal expert, she has "no burden to produce models or methods of [her] own." *Id.* (citations omitted).  And Matevich's reliance on her industry expertise—experience that Austin Smith admittedly lacks (*see supra* n.5)—to critique the unsupported assumptions underlying Austin Smith's adjustments is appropriate here.  *See Cantor* v. *Perelman*, 2006 WL 3462596, at *7-8 (D. Del. Nov. 30, 2006) (denying motion to exclude rebuttal expert testimony based on industry-specific professional experience because such experience "can form the basis for reliable expert testimony" even without articulation of "an identifiable methodology").

*Second*, Plaintiff wrongly asserts that Matevich "claim[ed] that Austin Smith should not have accounted for the MUE denials."  (Matevich MTE at 25.)  Again, Matevich said no such thing.  Her actual opinion is that "Austin Smith's *assumptions* underlying her adjustment to the [Management] Projections to account for changes to Medicare's procedures for making MUEs do not reflect the practical realities of the MUE process."  (Matevich Report ¶ 63 (emphasis added).)  Plaintiff's insistence that Matevich's opinion is unreliable because she "offer[ed] no methodological basis to include" revenues from provisional MUE denials thus misses the point.  (Matevich MTE at 25.)   As a rebuttal expert, Matevich criticized Austin Smith's Medically

Unlikely Edit Adjustment, which reduced management's projections based on changes to MUE limits without even acknowledging possible uncertainty, let alone accounting for such uncertainty in her adjustment.  It is well settled that "rebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives." *Aviva Sports, Inc.* v. *Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834-35 (D. Minn. 2011) (collecting cases).

*Third*, Plaintiff misleadingly suggests that Matevich, in criticizing Austin Smith's Commercial Payor Custom Profiles Adjustment, opined on whether an adjustment based on Millennium's eventual discontinuance of custom profiles was necessary at all, complaining that "Matevich does not understand that custom profiles resulted in increased rates of medically unnecessary tests and it is therefore necessary to adjust the [Management] Projections to account for this." (Matevich MTE at 19.)  Not so.  Matevich explained that *Austin Smith's* method for calculating such an adjustment relied on numerous unsupported assumptions, including her "unsubstantiated assumption that commercial payor billing and Medicare billing are comparable" and her "unfounded assumption" that "nine codes billed by Millennium but not billed by Ameritox and Aegis captures the expected impact of the discontinuance of Millennium's use of Custom Profiles." (Matevich Report ¶¶ 42, 48, 51.)

*Fourth*, as to Austin Smith's Specimen Volume Growth Rate Adjustment, Plaintiff erroneously asserts that Matevich "claim[ed] that Austin Smith should not have adjusted the [Management] Projections to include more reasonable specimen volume growth forecasts." (Matevich MTE at 30; *see also id.* at 27, 30 (incorrectly claiming that Matevich "conten[ded] that Austin Smith should have ignored" more recent growth rate data and "assum[ed] high growth rates").)  This is again incorrect.  Matevich opined that Austin Smith's analysis "is incomplete and appears to be selectively chosen in a manner unfavorable to Millennium" because it failed to take

into account additional, highly relevant industry information when applying her remarkably drastic reductions to Millennium management's projected specimen volume growth rates.[8] This includes rapid growth in the urine drug testing and toxicology space—Millennium's focus—and strong industry projections due to the growing need for testing in response to the opioid crisis. (Matevich Report ¶¶ 17, 27-38.) Plaintiff's insistence that Matevich's opinion is unreliable because she did not provide support for what Millennium's specimen volume growth rates should have been is misplaced because Matevich never purported to offer such an affirmative opinion, and, as a rebuttal expert, she has no burden to do so. *See Winn-Dixie Stores*, 2021 WL 2352016, at *14. Instead, Matevich pointed out the flaws in Austin Smith's aggressive and unfounded adjustments.

**B.    Plaintiff Improperly Seeks To Exclude Matevich's Testimony Based on Arguments Addressed to Weight Rather Than Admissibility.**

Plaintiff spends the remainder (and majority) of his Motion raising arguments that are not bases to exclude expert testimony under Rule 702. Over the course of nearly 20 pages, Plaintiff attempts to respond to Matevich's various criticisms of Austin Smith's assumptions in her report, highlighting facts that Plaintiff believes Matevich should have considered and arguments that Plaintiff finds unpersuasive. Even assuming Plaintiff's responses had merit, in asking the Court to *preclude* Matevich from testifying based on these grounds, Plaintiff conflates issues of admissibility with weight.

Expert testimony is unreliable when it is based on "subjective belief or unsupported speculation." *In re Paoli*, 35 F.3d at 742 (citation omitted). But arguments that an expert's

---

[8]    Austin Smith adjusted Millennium management's projected Medicare specimen volume growth rate in 2014 from 21.0% to *0.0%*, and more than halved the projected growth rates for 2015 and 2016 onward. (*See* Matevich Report ¶ 16.) Austin Smith made similarly aggressive reductions to management's projected commercial payor specimen volume growth rates, cutting them by more than one third, nearly one half, and over two thirds, respectively, for the relevant years. (*Id.*)

reasoning is "factually flawed," *C R Bard, Inc.* v. *AngioDynamics Inc.*, 2018 WL 3130622, at *11 (D. Del. June 26, 2018), for example, or does "not sufficiently account for contradictory evidence," *Int'l Constr. Prods., LLC* v. *Caterpillar Inc.*, 2022 WL 4465376, at *25 (D. Del. Sept. 26, 2022), go to the weight to be afforded to those opinions, not their reliability.  Indeed, courts frequently reject the type of "scattershot *Daubert* challenge" Plaintiff attempts here.  *C R Bard*, 2018 WL 3130622, at *11.  This Court should as well.

> 1.    Plaintiff Fails To Establish that Matevich's Criticism of
> Austin Smith's Local Coverage Determination Adjustment Is Inadmissible.

Plaintiff raises three general responses to Matevich's criticisms of Austin Smith's LCD adjustment, none of which calls into question the reliability of Matevich's opinions.  *First*, Plaintiff argues that Matevich's opinions are not based "on the facts that were known and knowable to Millennium's management," claiming that Matevich failed to take into account that management had been advised by a consultant that the draft LCD in question was "likely to be finalized." (Matevich MTE at 16.)  But this point is immaterial to Matevich's criticism of Austin Smith; Matevich criticized Austin Smith for assuming with *100% certainty* that the LCD would be adopted, without any consideration of the uncertainty that a draft LCD subject to public comment will ultimately be issued with no material changes. (Matevich Report ¶ 78.)  And even if Plaintiff's criticism were apposite, the failure to "sufficiently account for contradictory evidence in the record" is a question of weight, not admissibility.  *Caterpillar*, 2022 WL 4465376, at *25.

*Second*, Plaintiff takes issue with Matevich's explanation that, contrary to Austin Smith's assumption, the draft LCD did not require physicians to decrease testing, as Austin Smith assumes. (Matevich MTE at 17.)  But Plaintiff's argument that Matevich's opinion is unreliable because she "provides no evidentiary support" is itself unfounded.  (*Id.*)  Matevich examined the language of the LCD and applied her industry experience and an academic study to support her conclusion.

(Matevich Report ¶ 79.)  In rebutting Austin Smith's analysis, Matevich was not required herself to "conduct[] [a] modeling of the numbers of physicians she claims would have changed their billing practices." (Matevich MTE at 17); *see Winn-Dixie Stores*, 2021 WL 2352016, at *14.  Nor is it disqualifying that Matevich did not discuss specific pieces of evidence in the record that Plaintiff points to and argues she should have considered.  *See*, *e.g.*, *Helios Software, LLC* v. *Awareness Techs., Inc.*, 2015 WL 12806482, at *2 (D. Del. Apr. 13, 2015) ("[A]n expert's knowledge of specific facts regarding [the subject of the expert's testimony]—or lack thereof— goes to the weight accorded to that expert's report and testimony, rather than its admissibility.") (citation omitted).[9]

*Third*, Plaintiff contends that Matevich's entire criticism of Austin Smith's LCD adjustment is unreliable because Matevich declined to say at her deposition whether she personally agreed with one of the findings of the studies Matevich cites.  (Matevich MTE at 18.)  But whether Matevich can herself verify the findings of a study or agrees with its conclusion does not change the fact that the study presents further evidence—evidence that Austin Smith failed to even acknowledge—that the impact of proposed LCDs are far from certain.  And, in any event, Plaintiff's argument is again directed at weight rather than admissibility.  *See Geis* v. *Tricam*

---

[9]  Plaintiff specifically claims that Matevich "ignore[d] the evidence that shows that Millennium's management did not want to risk a probe of medical necessity because it was concerned that its physicians would not be able to prove it." (Matevich MTE at 17.)  But the single email he cites for that proposition is discussing Millennium's MUE appeals, and thus concerns *prior* tests that had already been conducted. (D.I. 254-36 (3/27/14 email from T. Kennedy).)  The email says nothing about Millennium management's beliefs as to whether physicians moving forward would be able to adequately document medical necessity in the event the draft LCD were adopted.  Moreover, Plaintiff neglects to mention that Daniel Pencak expressly *rejected* Plaintiff's characterization of this email.  (*See* Ex. 7 (Pencak Dep. Tr.) at 119:2-6 ("Q: You'd agree that Millennium is expressing here no confidence that claims could be supported on medical necessity grounds, isn't that correct?  A: No.").)

*Indus., Inc.*, 2010 WL 8591142, at \*8 (D.N.J. Oct. 6, 2010) ("attempt to impeach [expert]'s credibility" is not a matter of admissibility).

2.    Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Commercial Payor Custom Profile Adjustment Is Inadmissible.

Plaintiff's responses to Matevich's opinions on Austin Smith's custom profile adjustment take a similar tack. Even assuming his arguments are valid (and they are not), none of them call the reliability of Matevich's testimony into question.

*First*, Plaintiff tries to exclude Matevich's opinion because she purportedly "neither acknowledge[d] nor engage[d] with the basic facts about Millennium's use of custom profiles." (Matevich MTE at 19). As discussed above (*supra* at 14), and as Matevich explained in her report (¶ 42), whether Millennium's use of custom profiles actually resulted in medically unnecessary testing is immaterial to Matevich's criticism. Matevich opined that Austin Smith's attempts to estimate the revenues associated with Millennium's purported medically unnecessary testing—by comparing Medicare reimbursement data for test codes "which Millennium billed but which two selected competitors of Millennium did not"—is "unsupported and unreliable because it is based on an ad hoc analysis with unreasonable assumptions." (*Id.* ¶¶ 42, 44-45.)

Plaintiff also seizes on a citation to industry billing guidelines published in 2018 (Matevich MTE at 22-23 (citing Matevich Report ¶¶ 54-55)), but his criticism that this version of the guidelines postdates the 2014 Transaction concerns, at most, only the usefulness of the source—an issue of weight, not admissibility. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2016 WL 4056026, at \*6 (E.D. Pa. July 27, 2016) ("deficiencies in the articles relied upon" by expert "go to weight, not admissibility").[10]

---

[10]    While ultimately irrelevant to Plaintiff's Motion, Plaintiff again mischaracterizes the record in his description of Millennium's custom profile practice. He claims, without citing any

-18-

*Second*, Plaintiff claims that Matevich "fail[ed] to engage with the methodology employed by Austin Smith" by "fail[ing] to analyze whether [Ameritox and Aegis] were appropriate comparators." (Matevich MTE at 20-21.)  These claims are likewise unfounded.  Matevich offered no opinion on whether Ameritox and Aegis are or are not "appropriate comparators"; she criticized Austin Smith's failure to provide *any* rational explanation—let alone one rooted in an understanding of clinical laboratory industry billing practices—for why a code billed by Millennium but not by Ameritox or Aegis would be medically unnecessary.  (Matevich Report ¶¶ 51-57.)  As Matevich explained, "laboratory services providers bill different codes for various reasons, including differences in physician and patient customer bases, geography, testing capabilities, and test offerings." (*Id.* ¶ 52.)  Austin Smith failed to consider any of those potential explanations for differences in billing codes between competitors.  She simply asserted that Millennium billed for medically unnecessary tests while Ameritox and Aegis did not, and then assumed that all differences in their billing practices must be the result of Millennium's medically unnecessary billing.  (Austin Smith Report ¶ 128.)

---

support, that Millennium "coerced physicians to submit 'custom profiles.'"  (Matevich MTE at 18.)  This statement ignores the fact that no physician was required to use a custom profile and that Millennium specifically provided flexibility to their customers to "either order a custom [profile] . . . [or] order custom tests," depending on a patient's needs. (*See* D.I. 252-38 (Hardaway Dep. Tr.) at 48:9-23).)  Plaintiff then claims that custom profiles "authorized Millennium to perform an array of tests on specimens without any consideration of whether the test was medically necessary for the patient."  (Matevich MTE at 18-19.)  Curiously, Plaintiff cites to Matevich's deposition testimony for this proposition (*see id.* n.75), despite her never making or endorsing this claim in the testimony he cites.  Plaintiff further asserts that Millennium "threaten[ed] to stop doing business with [physicians] if they did not increase their testing." (*Id.* at 19.)  But, in support, he cites an email that says no such thing (*see* D.I. 254-34 (3/11/14 email from M. Loucks)), and a presentation to the Department of Justice that says just the opposite (*see* D.I. 254-10 (4/8/2014 Presentation to DOJ) at -0166 ("Practices Were Not Pushed Into Ordering Tests They Did Not Want Without Evaluation Of Medical Necessity.")).

To illustrate the unreliability of Austin Smith's methodology, Matevich analyzed the same data from the Centers for Medicare & Medicaid Services relied on by Austin Smith and explained that Aegis and Ameritox each bill codes that the other laboratory does not (Matevich Report ¶ 52), exposing the internal contradiction in Austin Smith's two claims (i) that billing differences must be the product of medically unnecessary testing and (ii) that Aegis and Ameritox were not engaged in such practices (Austin Smith Report ¶ 128). Matevich goes further and points out that five other competitors identified by Austin Smith elsewhere in her report (*id.* ¶¶ 13, 151) *did* bill all but one of the codes billed by Millennium but not by Aegis or Ameritox, contrary to Austin Smith's baseless assumption that Millennium must have been billing those codes because they were for tests ordered by physicians using Millennium's custom profiles, and, furthermore, were medically unnecessary tests. (Matevich Report ¶ 57.)[11]

At bottom, Plaintiff disputes the persuasiveness of Matevich's criticisms, and this is not a basis for excluding expert testimony. *See MiiCs & Partners, Inc.* v. *Funai Elec. Co.*, 2017 WL 6268072, at *6 (D. Del. Dec. 7, 2017) (plaintiff's objections to expert's "analytical approach" and "erroneous[] assum[ptions]" go to weight, not admissibility).

        3.      Plaintiff Fails To Establish that Matevich's Criticism of
                   Austin Smith's Medically Unlikely Edit Adjustment Is Inadmissible.

Plaintiff's responses to Matevich's criticisms of Austin Smith's MUE adjustment also are not grounds for precluding her testimony. As described above (*see supra* at 13-14), Plaintiff repeatedly mischaracterizes Matevich's arguments, declaring that Matevich "claim[ed] that the

---

[11]    Matevich's criticism of Austin Smith's reliance on Medicare data to estimate commercial payor revenues also is not a "strawman" argument. (Matevich MTE at 21-22.) That commercial payor data was not available does not absolve Austin Smith from having to substantiate why using Medicare data is an appropriate alternative, despite the undisputed differences in billing practices between the two payor groups. (*See* Matevich Report ¶ 48.)

appeals process would be successful" and that "Austin Smith should not have accounted for the MUE denials" (Matevich MTE at 25).  This is incorrect.  Matevich criticizes Austin Smith for failing to acknowledge that MUE denials can be appealed and that, if unsuccessful, laboratories will typically change their billing practices to minimize any further losses—two processes that Matevich knows well from her 40 years in the industry.  (Matevich Report ¶¶ 66-68.)  Instead, Austin Smith assumed with 100% certainty—and without any explanation—that no pending MUE denial would be reversed on appeal and that Millennium would make no adjustments to its billing practices to avoid such denials moving forward.  (*Id*.)

Faced with these deficiencies, Plaintiff tries to deflect, arguing that Matevich did not examine the record to determine what efforts Millennium took to appeal its MUE denials, the likelihood of success, or how the ongoing appeals should be reflected in Millennium's revenue projections.  (Matevich MTE at 25.)  Such an investigation is not Defendants' burden.  Matevich is showing the flaw in the unsupported assumptions that Austin Smith has made about the clinical laboratory industry—nothing more.  *Aviva Sports*, 829 F. Supp. 2d at 834-35 ("[R]ebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives.").

Plaintiff likewise claims that Matevich did not account for evidence purportedly showing that Millennium resisted taking "steps to alter its practices."  (Matevich MTE at 25-26.)  Even assuming that Matevich could have or should have considered these additional aspects of the record, Plaintiff again makes arguments that squarely address weight, not admissibility.  *See Caterpillar*, 2022 WL 4465376, at *25 ("If Caterpillar believes that [the expert] did not sufficiently

account for contradictory evidence in the record, that goes to the weight, and not the admissibility of his opinions.").[12]

> 4.    Plaintiff Fails To Establish that Matevich's Criticism of Austin Smith's Specimen Volume Growth Rate Adjustment Is Inadmissible.

Plaintiff also mischaracterizes Matevich's opinion concerning Austin Smith's adjustments to specimen volume growth rates, incorrectly stating that Matevich purported to conduct an affirmative analysis of what Millennium's projected specimen volume growth rates should have been, and then claiming that she "failed to consider" certain factors and that her methodology was "speculative" and "unreliable." (Matevich MTE at 27-30.) Plaintiff goes even further and parlays this mischaracterization of Matevich's opinion into an attempt to rehabilitate the shortcomings of Austin Smith's analysis. Specifically, Plaintiff states that the "thrust of Matevich's contention appears to be that Austin Smith does not take other evidence [besides Millennium's Q1 2014 growth rate] into consideration," and then lists "other evidence" that Austin Smith mentioned in her report and purportedly relies upon. (*Id.* at 27.) Matevich does not claim that Austin Smith relies solely on that one data point. Rather, Matevich explains that Austin Smith's choice to "focus[] extensively" on that single period, and without any recognition of how seasonal variability might skew that single data point, was inconsistent with Matevich's industry experience. (Matevich Report ¶ 18.)[13]

---

[12]    Plaintiff also misrepresents Matevich's testimony when he claims that she "admits that the [Management] Projections continued to assume that *no such denials* would occur." (Matevich MTE at 26 (citing D.I. 254-4 (Matevich Dep. Tr.) at 235:9-237:4).) This is not what Matevich said. Rather, when asked whether, in the Management Projections, Millennium "continued to project billings above the MUE limits," she responded that she "didn't look into it" because it was not relevant to her analysis of Austin Smith's assumptions. (D.I. 254-4 (Matevich Dep. Tr.) at 235:16-20; 236:21-237:4.)

[13]    Plaintiff's claim that Matevich "lacks expertise to opine about Austin Smith's selection of long-term growth rates" also rests on a mischaracterization of Matevich's opinion and should be

Plaintiff's additional arguments about factors or evidence that Matevich supposedly did not consider properly are likewise groundless. *First*, Plaintiff provides no support for his assertion that Matevich's criticism of Austin Smith's characterization of industry trends in 2014 "is contrary to [Matevich's] own industry experience." (Matevich MTE at 28.) His only cite is to deposition testimony where, when asked about "the regulatory and compliance challenges facing the toxicology industry" in April 2014, she first responded that she "would have to research that," but then explained that she can provide "a general overview," and proceeded to do just that once counsel clarified his question. (D.I. 254-4 (Matevich Dep. Tr.) at 128:11-20; 129:17-130:9.) Whether an expert "should have more diligently researched the underlying facts . . . is a question of weight, not admissibility." *Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 169 (D.N.J. 2008). But more importantly, nowhere did Matevich state that her criticisms of Austin Smith's deflated growth rates are "contrary" to Matevich's own experience.[14]

---

rejected. (Matevich MTE at 28.) Plaintiff protests that Matevich "is not an expert in valuation methodologies, so she cannot opine how the Guideline[] Public Company analysis relates to Austin Smith's distinct growth rate analysis." (*Id.* at 29.) Plaintiff fundamentally misunderstands Matevich's criticism. Matevich explained that Austin Smith relied on industry growth rates, taken from large laboratory services companies Quest and LabCorp, that "are not directly applicable to Millennium[] because Millennium's business is focused on toxicology, a rapidly growing subsector of the broader laboratory services market at the time." (Matevich Report ¶ 27.) She based this opinion on her independent review of the data and analyst reports cited by Austin Smith and her own understanding of the operations of the two larger companies (one of which Matevich worked for). (*Id.* ¶¶ 27-29.) Her reference to Austin Smith's Guideline Public Company analysis was to highlight that Austin Smith herself made similar statements about the difficulties in comparing Quest's and LabCorp's growth rates to Millennium's given their size and diversification. (*See id.* ¶ 28 & nn.40-41.) If Austin Smith has an explanation for these apparent inconsistencies, she should have provided it in her report. But Plaintiff cannot insulate Austin Smith's entire growth rate adjustment from criticism by Matevich simply because Austin Smith made these statements while conducting a separate valuation analysis.

14      Plaintiff's objection that Matevich "did not know if Millennium was engaged in excessive testing" is irrelevant. (Matevich MTE at 28.) Austin Smith made additional adjustments based on Millennium's specific practices elsewhere, adjustments that, as Matevich explained, suffer from their own flaws. (*See* Matevich Report ¶ 8.) Here, Matevich was criticizing Austin Smith's

*Second*, Plaintiff criticizes the extent to which Matevich "investigate[d] whether any of [Millennium's] competitive characteristics were actually advantages to Millennium." (Matevich MTE at 29.) Again, this criticism concerns weight, not admissibility. *See Warren Hill, LLC* v. *Neptune Invs., LLC*, 2021 WL 2044389, at *7 (E.D. Pa. May 20, 2021). Plaintiff also ignores that the competitive advantages cited by Matevich, which were described in detail in Millennium's 2014 Transaction materials and confirmed by Millennium's President at his deposition (*see* Matevich Report ¶ 39 nn.68, 70-73), were advantages that she knew were specifically "valued" by physicians from her experience in the industry. (*Id.* ¶ 39; *see also* Ex. 6 (Matevich Dep. Tr.) at 135:13-22 (Millennium "competed and they managed to win some business from us at that time based on their faster turnaround time" and "much more responsive . . . technical team").) Austin Smith, on the other hand, did not consider these potential advantages at all, possibly because she lacked the industry expertise to do so.

*        *        *

Plaintiff's responses to Matevich's criticisms of Austin Smith's assumptions are not bases to seek preclusion of her testimony under *Daubert*, and should be rejected for that reason alone. But in making these arguments, Plaintiff also mischaracterizes Matevich's opinion, her testimony, and the evidence on which she relies.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Exclude the Testimony of Defendants' Expert Branka Matevich.

---

decision to arbitrarily reduce Millennium's specimen volume growth rates based on "projected laboratory testing industry growth." (Austin Smith Report ¶ 109.)

Dated: October 24, 2022
      Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.


By:    */s/ Jason M. Madron*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:    (302) 651-7700
Fax:    (302) 651-7701
Email: collins@rlf.com
      stearn@rlf.com
      madron@rlf.com

-and-

Christopher Michael Viapiano
Oliver W. Engebretson-Schooley
Julie G. Petiford
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006-5215
Tel:    (202) 956-7500
Fax:    (202) 293-6330
Email: viapianoc@sullcrom.com
      engebretsono@sullcrom.com
      petifordj@sullcrom.com

-and-

Ann-Elizabeth Ostrager
Mark A. Popovsky
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:    (212) 558-4000
Fax:    (212) 558-3588
Email: ostragerae@sullcrom.com
      popovskym@sullcrom.com

*Attorneys for JPMorgan Chase Bank, N.A.*

RICHARDS, LAYTON & FINGER, P.A.


By:    */s/ Jason M. Madron*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:    (302) 651-7700
Fax:    (302) 651-7701
Email: collins@rlf.com
      stearn@rlf.com
      madron@rlf.com

-and-

Benjamin S. Kaminetzky
Lara Samet Buchwald
Tina Hwa Joe
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel:    (212) 450-4000
Fax:    (212) 701-5351
Email: ben.kaminetzky@davispolk.com
      lara.buchwald@davispolk.com
      tina.joe@davispolk.com

*Attorneys for Citibank, N.A.*

MORRIS JAMES LLP


By:    */s/ Stephen M. Miller*
Stephen M. Miller (No. 2610)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Tel:    (302) 888-6853
Fax:    (302) 571-1750
Email: smiller@morrisjames.com

POLSINELLI PC

By:   */s/ Christopher A. Ward*
Christopher A. Ward (No. 3877)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Tel:   (302) 252-0920
Fax:   (302) 252-0921
Email:  cward@polsinelli.com

-and-

Stephen Mark Dollar
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Tel:   (212) 318-3000
Fax:   (212) 318-3400
Email: steve.dollar@nortonrosefulbright.com

*Attorneys for BMO Harris Bank, N.A.*

-and-

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel:   (212) 556-2191
Fax:   (212) 556-2222
Email: jemurphy@kslaw.com

-and-

John C. Toro
Paige Nobles Clifton
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Tel:   (404) 572-2806
Fax:   (404) 572-5100
Email: jtoro@kslaw.com
        pclifton@kslaw.com

*Attorneys for SunTrust Bank*