**EXHIBIT G**

Redacted Public Version of Plaintiff's Reply in Further Support of Plaintiff's Daubert Motion to
Exclude the Testimony of Branka Matevich [Adv. Docket No. 296]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | |
| MILLENNIUM LAB HOLDINGS II, LLC, | § | Chapter 11 |
| *et al.*, | § | CASE NO. 15-12284 (LSS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| MARC S. KIRSCHNER solely in his | § | |
| capacity as TRUSTEE of the | § | |
| MILLENNIUM CORPORATE CLAIM | § | |
| TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 17-51840 (LSS) |
| | § | |
| J.P. MORGAN CHASE BANK, N.A., | § | |
| CITIBANK N.A., BMO HARRIS BANK, N.A., | § | |
| and SUNTRUST BANK, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S *DAUBERT*
MOTION TO EXCLUDE THE TESTIMONY OF BRANKA MATEVICH**

McKOOL SMITH, P.C.
Kyle A. Lonergan (*pro hac vice*)
Joshua J. Newcomer (*pro hac vice*)
Grant L. Johnson (*pro hac vice*)
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York, 10001-8603
Tel: (212) 402-9400
klonergan@mckoolsmith.com
jnewcomer@mckoolSmith.com
gjohnson@mckoolSmith.com

COLE SCHOTZ P.C.
G. David Dean (No. 6403)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 651-2012
ddean@coleschotz.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENT ..................................................................................1

II.  ARGUMENT ........................................................................................................3

    A.   Defendants Fail to Address the Fact that Rebuttal Expert Opinions must be Reliable. ............................................................................................................3

    B.   Defendants Fail to Address the Actual Criticisms of Matevich's Inadmissible LCD Opinions ............................................................................................................5

    C.   Defendants Fail to Defend Matevich's Custom Profile Opinions. ..........................8

    D.   Defendants Fail to Defend Matevich's MUE Denial Opinions. ............................10

    E.   Defendants Fail to Defend Matevich's Growth Rate Opinions. ............................11

    F.   To Try to Avoid the Inadmissibility of Matevich's Opinion, Defendants Have Narrowed the Scope of Matevich's Testimony to the Point of Nullity. ...............12

III. CONCLUSION.......................................................................................................13

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. IBM*,
    Civ. No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016 (D. Del. May 19, 1997) .........................8

*Aviva Sports, Inc., v. Fingerhut Direct Marketing, Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011)....................................................................................4

*Calhoun v. Yamaha Motor Corp.*,
    350 F.3d 316 (3d Cir. 2003)..................................................................................................3

*Funderburk v. S.C. Elec. & Gas Co.*,
    395 F. Supp. 3d 695 (D.S.C. 2019).......................................................................................3

*Helios Software, LLC v. Awareness Techs., Inc.*,
    2015 WL 12806482 (D. Del. Apr. 13, 2015)..........................................................................6

*In re Nellson Nutraceutical, Inc.*,
    356 B.R. 364 (Bankr. D. Del. 2006) ....................................................................................11

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994).................................................................................................4, 6

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)...............................................................................................................3

*Three Crown Ltd. P'ship v. Salomon Bros.*,
    906 F. Supp. 876 (S.D.N.Y. 1995) ........................................................................................8

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
    No. 15-6480, 2021 U.S. Dist. LEXIS 107778 (E.D. Pa. June 9, 2021).........................1, 3, 4, 8

Plaintiff Marc S. Kirschner, solely in his capacity as Trustee of the Millennium Corporate Claim Trust, respectfully files this Reply Brief in response to Defendants' Memorandum of Law in Opposition ("Opposition") and in further support of Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Expert Branka Matevich ("Motion").

## I.    SUMMARY OF ARGUMENT

The Trustee's Motion sets forth numerous grounds on which Matevich's opinions should be excluded (in many cases based on Matevich's own testimony). In response, Defendants ask the Court to drop its *Daubert* gatekeeping function for rebuttal experts. For example, in her Report, Matevich quoted an article for the proposition that Millennium did not need to follow Medicare billing and reimbursement requirements known as "LCDs" because the regulators might not enforce them.[1] On its face, this is an absurd proposition; and, as set forth in the Trustee's Opening Brief in Support of the Motion, Millennium was alarmed by the LCD reimbursement changes and was warned by its consultant that the changes would be adopted.[2] When cross-examined at deposition, Matevich refused to say that she agreed with the proposition set forth in her Report.[3] Defendants now claim, incredibly, that an opinion based on an article Matevich refused to agree with is still admissible because she does not actually have to hold the opinion she presents.[4] That is not the standard for any expert who, if nothing else, must actually proffer opinions that are her own.[5]

---

[1] D.I. 254-3 (Matevich Report) at ¶ 79.

[2] D.I. 254 at 9, 14–15.

[3] D.I. 254-4 (Matevich Tr.) at 322:17–24.

[4] D.I. 283 at 17.

[5] *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2021 U.S. Dist. LEXIS 107778, at *47 (E.D. Pa. June 9, 2021) (holding that, "like any expert witness," rebuttal experts must still show reliability under Rule 702 and "good grounds" for their proposed testimony).

Defendants also try to impugn the Motion by claiming it misstates Matevich's opinions, but in reality, Defendants have now abandoned or narrowed Matevich's opinions to the point that they are non-existent. For example, in her Report, Matevich claimed that it was improper for Austin Smith to compare Millennium's billing codes to the codes used by its closest and most similar competitors in terms of billing practices—Ameritox and Aegis—to determine the impact of discontinuation of custom profiles due to medically unnecessary billing.[6] Now, according to Defendants, Matevich has "no opinion on whether Ameritox and Aegis are or are not 'appropriate comparators.'"[7] But, this hollows out Matevich's opinion to the point of being a strawman, which is a method Defendants employ throughout their Opposition.

To that end, the few opinions that Defendants acknowledge Matevich actually expressed should be excluded. First, Defendants do not rebut many of the grounds set forth in the Motion regarding why Matevich's opinions fail to satisfy the threshold admissibility standards for opinion testimony under Rule 702.[8] This includes Matevich's claim that Austin Smith's custom profiles adjustment to the financial projections was based on "hindsight" because Austin Smith chose July 2015 as the projected date of the discontinuance, which is an opinion about valuation methodologies about which Matevich has no expertise. The Court should grant the motion with respect to those opinions that are challenged by Plaintiff but are unrebutted by Defendants.

Second, where they do respond, Defendants fail to show the admissibility of Matevich's testimony based on Rule 702's expertise, reliability, and fit requirements. For example, Matevich's industry experience does not align with her opinions on the appropriate growth rates or the appropriateness of the evidence Austin Smith considered in making her projections. For

---

[6] D.I. 254-3 (Matevich Report) at ¶¶ 51–57.
[7] D.I. 283 at 19.
[8] *See, e.g.*, D.I. 254 at 11–14, 18–19.

Matevich's opinions on LCDs, MUEs, and custom profiles, Defendants claim that her failure to rely on the relevant evidence goes to weight, not admissibility, but that is misplaced where Matevich's opinion is itself about evidence relied on by Austin Smith that Matevich herself did not review. As set forth below, Matevich's opinions should be excluded.

## II.     ARGUMENT

### A.      Matevich is Not Qualified to Offer Opinions on the Appropriateness of Austin Smith's Valuation of Millennium.

As a preliminary matter, Matevich is not qualified to criticize the methodology employed by Austin Smith in conducting her solvency analysis of Millennium. Defendants challenge the Motion on Matevich's general qualifications at length, but they miss the point. Although Matevich has general industry experience, she is admittedly not a valuation expert and thus unqualified to offer opinions on the appropriate evidence for Austin Smith to consider in performing her valuation, as discussed further in the substantive areas below. Where Matevich criticizes Austin Smith's valuation methodologies, Matevich steps beyond her qualifications and such opinions should be excluded.

### B.      Defendants Fail to Address the Fact that Rebuttal Expert Opinions Must be Reliable.

While Defendants try to shield Matevich's opinions behind the "lesser burden" of rebuttal experts, that lesser burden relates only to the scope of opinions by rebuttal experts and does not exempt them from compliance with the expertise, reliability, and fit requirements of Rule 702.[9]

---

[9] *See Winn-Dixie Stores, Inc.*, 2021 U.S. Dist. LEXIS 107778, at \*47 (holding that, "like any expert witness," rebuttal experts must still demonstrate reliability under Rule 702 and show "good grounds" for their testimony); *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003) (defining *Daubert*'s three-part as "qualification, reliability and fit"); *see also Kumho Tire Co.*, *Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that Rule 702 "applies to all expert testimony"); *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019) ("a rebuttal expert is still subject to the scrutiny of *Daubert* and must offer both relevant and reliable opinions.").

The cases Defendants cite to imply that Rule 702 is not applied as strictly against rebuttal experts do not support their contention. For example, Defendants cite *Aviva Sports, Inc., v. Fingerhut Direct Marketing, Inc.*[10] and *Winn-Dixie Stores* for the proposition that a rebuttal expert need not offer an alternative methodology.[11] However, the Trustee did not move to exclude Matevich's testimony because she failed to offer alternative methodologies; rather, the Trustee moved to exclude the opinions she does offer because they are unreliable. *Winn-Dixie Stores* supports the Trustee's Motion because it holds that, "like any expert witness," rebuttal experts must still demonstrate reliability under Rule 702 and show "good grounds" for their proposed testimony.[12] Critically, Defendants have the burden of establishing that each of Matevich's opinions satisfies Rule 702, and they fail to do so.[13] Matevich's testimony should be excluded accordingly.

Defendants also seek to downplay the Trustee's Motion as going to "weight rather than admissibility." However, Defendants understate the Court's gatekeeping function. Defendants cite to *C R Bard, Inc. v. AngioDynamics Inc.* for the proposition that "factual[] flaw[s]" in an expert's reasoning go only to weight and that so called "scattershot *Daubert* challenge[s]" should be rejected.[14] But, Defendants' citation is misleading—their quotations are from the party's argument, not the court's conclusion. The court concludes that, "in its role as gatekeeper, [it] must exclude expert testimony that is not reliable and not specialized."[15] Defendants also claim that failing to "sufficiently account for contradictory evidence" is irrelevant to an expert's admissibility.[16] But,

---

[10] 829 F. Supp. 2d 802 (D. Minn. 2011).

[11] D.I. 283 at 13–14.

[12] *Winn-Dixie Stores*, 2021 U.S. Dist. LEXIS 107778, at *47.

[13] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

[14] D.I. 283 at 15–16 (quoting 2018 WL 3130622, at *11 (D. Del. June 26, 2018)).

[15] 2018 WL 3130622, at *11.

[16] D.I. 283 at 16 (quoting (*Int'l Constr. Prods., LLC v. Caterpillar Inc.*, 2022 WL 4465376 (D. Del. Sept. 26, 2022)).

Defendants state this general proposition untethered to Matevich's opinion. The basis for Plaintiff's challenge to Matevich in the Motion that is unanswered by Defendants is not simply that Matevich failed to consider contradictory evidence, but that she criticizes Austin Smith's analysis as unsupported despite failing to review the evidence Austin Smith relies upon.[17] Defendants' attempt to water down the *Daubert* standard should be rejected.

### C.    Defendants Fail to Address the Trustee's Criticisms of Matevich's Inadmissible LCD Opinions.

The Motion challenges the admissibility of Matevich's opinion regarding the impact of the Noridian LCD on Millennium's financial projections at the time of the 2014 Transaction. Matevich's rebuttal opinion is that Austin Smith's opinion is not based on adequate foundation because sometimes LCDs change.[18] The Motion sets forth three reasons Matevich's opinion is unreliable.

First, Austin Smith's opinions that Matevich rebuts relate to financial projections, so it is necessary for Austin Smith and Matevich to base their opinions on facts that were known or knowable to management at the time of the 2014 Transaction.[19] Matevich admitted she did not consider those facts—including the specific documents cited by Austin Smith.[20] Those facts include that management had been advised that the LCD would be implemented and would not materially change.[21] Thus, Matevich's opinion is divorced from the record evidence and from accepted forecasting methodology. In their Opposition, Defendants do not claim that Matevich

---

[17] *See, e.g.*, D.I. 254 at 15–17.

[18] Defendants claim that Matevich's criticism is that Austin Smith assumed with 100% certainty the adoption of the LCD. D.I. 283 at 16. While that figure it is not in Matevich's report, if that is her opinion, Matevich needed evidence that management should have projected that any as-of-then-unfiled appeals were likely to succeed, but she has none.

[19] D.I. 254-1 (YAS Report) at ¶ 41.

[20] D.I. 254-4 (Matevich Tr.) at 102:15–16, 103:2–4, 286:17–292:8, 298:6–302:22.

[21] D.I. 254-27 (Draft Avalere Coding and Reimbursement Assessment) at pp. 4 & 44.

considered the evidence concerning management's knowledge at the time; instead they claim it is "immaterial" to Matevich's criticism because her opinion is not about the facts known to management at the time.[22] But, that is exactly why her opinion should be excluded: based on Defendants narrowing, it is not fit to the facts of the case or the methodology that she was rebutting, which was about management's reasonable expectation at the time of the 2014 Transaction.

Similarly, as set forth in the Motion, Matevich's opinion that the LCD might permit confirmation testing of negative point-of-care results is also unsupported speculation that is inconsistent with management's understanding of their business. In particular, Millennium modeled the reduction in NRPS that would occur as a result of the LCD, and Austin Smith used that analysis.[23] For Matevich to claim that an exception to the LCD's rule that routine confirmation testing was disallowed, required her to have some basis in Millennium's practices. Matevich admits she has no support for it in the factual record: it is "unsupported speculation," which is inadmissible.[24] In their Opposition, Defendants argue that Matevich did not need to "discuss specific pieces of evidence in the record that Plaintiff points to."[25] They attempt to support their position by citing to *Helios Software, LLC v. Awareness Techs., Inc.*[26] But that misses the mark— unlike *Helios*, where the expert simply failed to name certain materials he reviewed, the facts Matevich ignored, such as the fact that Millennium's management expected the LCD to be implemented, go to the very basis of her opinion that the LCD might not be implemented.[27]

---

[22] D.I. 283 at 16.

[23] D.I. 254-1 (YAS Report) at ¶ 123.

[24] *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (holding that courts should not admit an expert's opinion where it is "unsupported speculation.").

[25] D.I. 283 at 17.

[26] 2015 WL 12806482, at *2 (D. Del. Apr. 13, 2015).

[27] *See, e.g.,* D.I. 254-4 (Matevich Tr.) at 300:8–302:22 (unaware that draft LCD policies were substantially identical), 315:12–317:16 (unsure of whether the new LCD policy would harm Millennium's business).

Defendants' argument is effectively that Matevich did not need to base her opinion on any record evidence about management's knowledge that Millennium's client physicians would not be able to establish the medical necessity of their prior levels of confirmation testing. Her unfamiliarity with management's actual considerations and knowledge at the time shows that Matevich is engaged in "unsupported speculation."

Finally, Defendants' argument regarding the Foote and Town article that Matevich now disavows is also wrong. Matevich cited to and quoted from the Foote and Town article to advance her opinion that Austin Smith should have accounted for the fact that Millennium could violate the LCD because the risk of enforcement was low.[28] But, in her deposition, Matevich refused to say that she agreed with that opinion.[29] Now, Defendants are effectively claiming that Matevich must be allowed to offer opinions that she does not even hold. Her inclusion of a quote and reliance on an article in her report that she does not agree with again belies Defendants' argument that this goes to weight. On this point, Defendants quote from *Geis v. Tricam Indus., Inc.* for support,[30] but that quote is misleading. The *Geis* court considered a situation entirely unlike the present one. In *Geis*, the movant claimed that the expert was unreliable because he did not apply a particular technical standard.[31] That is very different from the situation here, where an expert bases her opinion on a study that she then disavows.

Defendants are thus left to argue that "whether Matevich can herself verify the findings of a study or agrees with its conclusion does not change the fact that the study presents further evidence . . . that the impact of proposed LCDs are far from certain."[32] This argument is obviously

---

[28] D.I. 254-3 (Matevich Report) at ¶ 79.
[29] D.I. 254-4 (Matevich Tr.) at 320:23–322:24.
[30] D.I. 283 at 17–18 (citing 2010 WL 8591142, at *8 (D.N.J. Oct. 6, 2010)).
[31] 2010 WL 8591142, at *8.
[32] D.I. 283 at 17.

flawed, because it is not Matevich's opinion testimony that Defendants are seeking to admit (she does not agree with the article), but instead the hearsay article itself *without* adoption by Matevich. This is not permitted, and thus her opinion should be excluded.

### D.    Defendants Fail to Defend Matevich's Custom Profile Opinions.

The centerpiece of Matevich's opinion regarding custom profiles originally was that Austin Smith should not have compared Millennium's billing codes to that of its closest competitors, Ameritox and Aegis, because billing differences between Millennium and Ameritox or Aegis might be due to "various reasons" including "differences in physician and patient customer bases, geography, test capabilities, and test offerings."[33] Now, Defendants reverse themselves and claim that Matevich is offering no opinion on whether Ameritox and Aegis are or are not "appropriate comparators."[34] As Defendants have abandoned Matevich's opinion, the Court should exclude it.

According to Defendants, Matevich's criticism is only about the method Austin Smith used to estimate how much unnecessary testing occurred.[35] As to that opinion, the Motion sets forth why Matevich's opinion is unreliable—Matevich did not support it with sufficient factual basis or reliable methodology. Numerous cases, including Defendants' own cases, show that this type of rebuttal criticism must be grounded in fact, not speculation.[36] Matevich admitted she had no

---

[33] D.I. 254-3 (Matevich Report) at ¶ 52; (D.I. 283) at 19.

[34] D.I. 283 at 19.

[35] Defendants attempt to dispute that Millennium coerced physicians into submitting custom profiles, part of the conduct for which Millennium was sued by DOJ and settled and for which there is mountains of evidence, but that does not address Matevich's opinion. D.I. 283 at 18 n.10.

[36] *See Allen v. IBM*, Civ. No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016, at *124 (D. Del. May 19, 1997) ("while an 'expert may give his opinion on a particular matter within the scope of his expertise, that opinion must be based on facts'") (citing *Randolph v. Laeisz*, 896 F.2d 964, 967-68 (5th Cir. 1990)); *Three Crown Ltd. P'ship v. Salomon Bros.*, 906 F. Supp. 876, 894 (S.D.N.Y. 1995) ("When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court.") (quoting *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137 (4th Cir. 1994); *Winn-Dixie Stores, Inc.*, 2021 U.S. Dist. LEXIS 107778, at *47 (holding that, "like any expert witness," rebuttal experts must still demonstrate reliability under Rule 702 and show "good grounds" for their proposed testimony).

8

support for her speculation that other reasons may explain the different usage of billing codes by Millennium's closest competitors.[37] In her deposition, Matevich was asked if she had any factual basis to claim that there were material differences between Millennium and Ameritox and Aegis for each category she identified: physician and patient customer bases, geography, test capabilities, and test offerings. She admitted that she did not.[38] Even though Matevich offered no factual basis for this criticism, Defendants ask the Court to allow Matevich to proceed with her unfounded speculation.

The Motion also seeks to exclude Matevich's unreliable comparisons of Millennium's billing codes to the billing codes for five laboratories that are not comparable to Millennium.[39] Matevich justified the comparison by claiming that Austin Smith had identified those five laboratories in other analyses in her report. In the Motion, the Trustee moved to exclude Matevich's opinions because her methodology is flawed. First, Austin Smith did not conclude those five laboratories were comparable.[40] And, unlike Austin Smith, who applied a methodology to determine that Ameritox and Aegis were appropriate comparators,[41] Matevich admitted that she did not consider whether the comparison was appropriate for the five laboratories she selected.[42] Thus, Matevich's opinion was not reliable or fit to the facts. In their Opposition, Defendants do not address these grounds for exclusion at all. They set forth no evidence that the comparison done by Matevich is appropriate or that her methodology is reliable.[43] Defendants' argument is again

---

[37] D.I. 254 at 20–22.

[38] Ex. 2 (Matevich Tr.) at 256:11–262:15.

[39] D.I. 254 at 22; D.I. 254-3 (Matevich Report) at ¶ 57 & EX. 8.

[40] D.I. 254-1 (YAS Report) at ¶ 126, 152 & Appendix C.

[41] *Id*. at ¶ 126 and Appendix C.

[42] Ex. 2 (Matevich Tr.) at 275:11–281:15.

[43] D.I. 283 at 19–20.

9

that, because it is "rebuttal," her methodology is effectively beyond scrutiny.[44] But that is not the law.

Finally, Defendants' response to the fact that Matevich had no knowledge about Millennium's use of custom profiles is that she needed no such knowledge.[45] Matevich claimed that Austin Smith's decision to account for the end of Millennium's use of custom profiles—and the medically unnecessary testing it caused—was unreliable.[46] Matevich cannot reliably opine on Austin Smith's opinions about Millennium's use of custom profiles while not having *any* knowledge about the facts underlying Austin Smith's opinions.

### E.    Defendants Fail to Defend Matevich's MUE Denial Opinions.

Defendants mischaracterize and severely curtail Matevich's opinion related to medically unlikely edit (MUE) denials of reimbursement. Austin Smith reviewed the record showing that Millennium experienced MUE denials starting in January 2014, that management knew that the denials were consistent with the regulations, and that appeals were unlikely to succeed. Yet, management did not account for the MUE denials in its projections.[47] Neither Matevich nor

---

[44] Defendants claim that "objections to expert's 'analytical approach' and 'erroneous assumptions' go to weight, not admissibility." (D.I. 283) at 20 (brackets omitted) (quoting *MiiCs & Partners, Inc. v. Funai Elec. Co.*, 2017 WL 6268072, at *6 (D. Del. Dec. 7, 2017)). But the *MiiCs* court did not issue such a categorical ruling.  Rather, it considered multiple expert challenges and excluded testimony, like Matevich's opinions, that had no "'reliable and tangible' evidence" while denying other motions based on the specific support and explanation proffered by the expert.

[45] D.I. 283 at 18.

[46] Defendants' only defense of the fact that Matevich relied on a guidelines documents published in *2018* to opine on what was appropriate in *2014* is that this error goes to weight. (D.I. 283) at 18 (citing *In re Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2016 WL 4056026, at *6 (E.D. Pa. July 27, 2016)). Whereas in the *In re Tylenol* decision the moving party simply pointed to certain distinguishing characteristics between the expert's testimony and research articles he relied on, here, the fact that the guidelines Matevich relied on post-dated the transaction shows that her opinion is unreliable.

[47] D.I. 254-1 (YAS Report) at ¶ 116.

Defendants dispute those facts.[48] Austin Smith accounted for those known facts in her projections—as is appropriate for proper valuation purposes.[49]

In response, Matevich offered the criticism that Austin Smith did not account for the possibility of success on appeals, but Matevich admitted that she did not review the evidence available to management regarding whether any appeal would succeed (and no such appeals had been filed).[50] Accordingly, the Motion moves to exclude her opinion because they are not fit to management's factual understanding and therefore lack foundation. In response, Defendants do not claim that Matevich actually considered the record (she did not), or the information that management knew should have been considered in their projections (she did not), or management's projections related to appeals (she "didn't look into it").[51] Rather, they claim she did not need to investigate the facts at all.[52] But, again, without basing her opinion on the facts known to management, Matevich should not be able to testify about the prospects for then unfiled appeals.[53] At best, Matevich's opinion is that it is possible to appeal MUE denials, which is not a proper use of expert testimony in the first place. Moreover, such an opinion does not fit the case and is not relevant to the projection exercise at hand because Austin Smith was tasked with valuing Millennium based on what was known or knowable at the time of the 2014 Transaction. Matevich is not qualified to make that determination, and regardless did not even try to do it.

### F.    Defendants Fail to Defend Matevich's Growth Rate Opinions.

Defendants also fail to defend Matevich's strawman arguments about Millennium's growth rates. Austin Smith adjusted Millennium's specimen volume growth rates to account for industry

---

[48] (D.I. 283) at 20–22.
[49] D.I. 254-1 (YAS Report) at ¶ 116.
[50] D.I. 254 at 25.
[51] D.I. 283 at 20–22.
[52] *Id*. at 21.
[53] *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 373 (Bankr. D. Del. 2006).

trends and future projections.[54] Matevich criticized Austin Smith for "focus[ing] extensively" on Millennium's most recent quarterly result.[55] In Opposition, Defendants fail to rebut the Motion's proof that Matevich ignored the evidence Austin Smith considered, which is necessary to opine on Austin Smith's growth rate opinions.

Matevich also claims that Austin Smith failed to consider that Millennium's supposed "company-specific advantages" justified forecasting a higher growth rate than supported by industry conditions or Millennium's own recent experience.[56] But, Matevich has no evidence that Millennium actually benefited from the competitive advantages she cites, as she admitted in her deposition and as is set forth in the Motion.[57] Defendants retreat to claiming that this failure goes to weight, citing *Warren Hill, LLC v. Neptune Invs., LLC*,[58] but *Warren Hill* concerned accusations that an expert failed to adequately confirm underlying data, not a situation, as here, where an expert's opinion rests on mere speculation.[59]

Defendants also do not address Matevich's failure to apply her knowledge that the industry was facing challenges and her failure to investigate whether Millennium was engaged in excessive testing. They attempt to distract from this challenge by Plaintiff by pointing to vague, high level testimony by Matevich about industry regulations, but that does not change the fact that Matevich admitted she did not research and account for the challenged relevant facts in her analysis.[60] To

---

[54] D.I. 254 at 26.

[55] D.I. 254-3 (Matevich Report) at ¶ 18.

[56] D.I. 254-3 (Matevich Report) at ¶¶ 39–41.

[57] D.I. 254 at 29–30. The marketing materials Defendants now point to in their Opposition do not actually speak to whether Millennium benefitted from any supposed advantages. D.I. 283 at 24.

[58] D.I. 283 at 24 (citing 2021 WL 2044389, at *7 (E.D. Pa. May 20, 2021)).

[59] Defendants also claim that the Trustee's argument that Matevich lacks the expertise to criticize Austin Smith's selection of long-term growth rates rests on a mischaracterization of Matevich's opinion, yet they fail to point to anything that the Trustee actually mischaracterized or explain how Matevich has relevant expertise. D.I. 283 at 22 n.13.

[60] D.I. 254-4 (Matevich Tr.) at 128:11–16, 142:21–24.

that end, Defendants' quotation of *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.* for the position that an expert can be admitted despite failing to adequately investigate the matters on which she opines is misleading.[61] In *Floorgraphics*, the expert was criticized for failing to confirm the data provided to her by the party on whose behalf she was offering opinions. By contrast, Matevich's failing is not that she did not confirm information provided to her by Defendants, but that she failed to base her opinion on relevant facts known to her or investigate the facts cited by Austin Smith. Thus, Defendants claim it is "irrelevant" that Matevich "did not know if Millennium was engaged in excessive testing," but fail to explain why Matevich's ignorance of a fact fundamental to Austin Smith's growth rates adjustment is "irrelevant."[62]

## III.    CONCLUSION

For the above reasons, and those set forth in the Motion, Plaintiff respectfully requests that the Court grant the Motion and exclude the opinions of Branka Matevich.

Dated: November 23, 2022

Respectfully submitted,

By: */s/ G. David Dean*
G. David Dean (No. 6403)
COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 651-2012
ddean@coleschotz.com

Kyle A. Lonergan (*pro hac vice*)
Joshua J. Newcomer (*pro hac vice*)
Grant L. Johnson (*pro hac vice*)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York, 10001-8603
(212) 402-9400
klonergan@mckoolsmith.com
jnewcomer@mckoolSmith.com

---

[61] 546 F. Supp. 2d 155, 169 (D.N.J. 2008).
[62] D.I. 283 at 23 n.14.

13

gjohnson@mckoolSmith.com

***Attorneys for Plaintiff***