## EXHIBIT H

Redacted Public Version of Plaintiff's Reply in Further Support of Plaintiff's Daubert Motion to Exclude the Testimony of Amy Hutton [Adv. Docket No. 297]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | |
| MILLENNIUM LAB HOLDINGS II, LLC, | § | Chapter 11 |
| *et al.*, | § | CASE NO. 15-12284 (LSS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| MARC S. KIRSCHNER solely in his | § | |
| capacity as TRUSTEE of the | § | |
| MILLENNIUM CORPORATE CLAIM | § | |
| TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 17-51840 (LSS) |
| | § | |
| J.P. MORGAN CHASE BANK, N.A., | § | |
| CITIBANK N.A., BMO HARRIS BANK, N.A., | § | |
| and SUNTRUST BANK, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S *DAUBERT***
**MOTION TO EXCLUDE THE TESTIMONY OF AMY HUTTON**

MCKOOL SMITH, P.C.
Kyle A. Lonergan (*pro hac vice*)
Joshua J. Newcomer (*pro hac vice*)
Grant L. Johnson (*pro hac vice*)
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York, 10001-8603
Tel: (212) 402-9400
klonergan@mckoolsmith.com
jnewcomer@mckoolSmith.com
gjohnson@mckoolSmith.com

COLE SCHOTZ P.C.
G. David Dean (No. 6403)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 651-2012
ddean@coleschotz.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENT ................................................................................1

II.   ARGUMENT ......................................................................................................3

      A.   Defendants Gloss Over the Requirement that Rebuttal Expert
           Opinions Must Be Reliable. ...............................................................................3

      B.   Defendants Do Not Defend Multiple Affirmative Opinions by
           Hutton that Should Be Excluded. ........................................................................4

      C.   The Flaws in Hutton's Work Go to Admissibility, Not Just Weight. .......................5

      D.   Defendants' Claim that Hutton Did Not Need to Perform a
           Reliable WACC Calculation is Flawed. ...............................................................6

      1.   Hutton Calculates a WACC that Neither She Nor Anybody Else,
           Including Defendants, Claim is Reliable. .............................................................6

      E.   Defendants Misrepresent Hutton's Operating Expense Margin. ...........................10

      F.   Hutton Puts Her Stamp on Additional Calculations That Neither
           She Nor Defendants Claim to Be Reliable. ........................................................11

      1.   Defendants Admit that Hutton Did Not Verify the Inputs to the
           Emerging Opportunities Calculation She Made. ..................................................12

      2.   Defendants Misrepresent Hutton's Opinion on Austin Smith's
           Growth Rate Projections. ...............................................................................12

      3.   Defendants' Response on MUE Denials Does Not Address Plaintiff's
           Challenge to Hutton's Opinions. ......................................................................13

      4.   Defendants' Argument Regarding the POC Test Cup Program Wholly
           Ignores the Extent of Hutton's Opinions. ..........................................................13

      5.   Defendants Do Not Defend Hutton's Changes to the Projections
           Based on the Foreseeable DOJ Settlement. ........................................................14

      6.   Defendants' Attempt to Deflect from Hutton's Opinions Related
           to Custom Profiles. ........................................................................................14

      G.   Defendants Fail to Show Hutton's Opinions on Rating Agencies or
           the Other Solvency Tests are Reliable. ..............................................................15

III.  CONCLUSION ................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*APEX Fin. Options, LLC v. Gilbertson*,
   2022 WL 613347 (D. Del. Mar. 1, 2022) ....................................................................3

*Aviva Sports, Inc., v. Fingerhut Direct Marketing, Inc.*,
   829 F. Supp. 2d 802 (D. Minn. 2011)........................................................................3

*Calhoun v. Yamaha Motor Corp.*,
   350 F.3d 316 (3d Cir. 2003)......................................................................................1

*Funderburk v. S.C. Elec. & Gas Co.*,
   395 F. Supp. 3d 695 (D.S.C. 2019)...........................................................................3

*Helios Software, LLC v. Awareness Techs., Inc.*,
   2015 WL 12806482 (D. Del. 2015) ..........................................................................13

*In re Nellson Nutraceutical, Inc.*,
   356 B.R. 364 (Bankr. D. Del. 2006) ...................................................................13, 14

*MPSK Oak Grove LLC v. Venuto*,
   2016 WL 3566720 (D.N.J. 2016) ..............................................................................6

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000)....................................................................................14

*R.D. v. Shohola, Inc.*,
   No. 3:16-CV-01056, 2019 U.S. Dist. LEXIS 198035 (M.D. Pa. Nov. 15, 2019) .....................5

*Rondor Music Int'l Inc. v. TVT Records LLC*,
   CV 05-2909-JTL, 2006 U.S. Dist. LEXIS 97118 (C.D. Cal. Aug. 21, 2006) .........................5

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) .................................................................................5

*SL EC, LLC v. Ashley Energy, LLC*,
   2021 WL 5112943 (E.D. Mo. Nov. 2, 2021)...........................................................11

*Sun Pharma Global Fze v. Lupin Ltd.*,
   2021 WL 856886 (D.N.J. 2021) ............................................................................5, 6

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
   No. 15-6480, 2021 U.S. Dist. LEXIS 107778 (E.D. Pa. June 9, 2021).................................1, 3

*Withrow v. Spears*,
   967 F. Supp. 2d 982 (D. Del. 2013).........................................................................12

Plaintiff Marc S. Kirschner, solely in his capacity as Trustee of the Millennium Corporate Claim Trust, respectfully files this Reply brief in response to Defendants' Memorandum of Law in Opposition ("Opposition") and in further support of Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Expert Amy Hutton ("Motion").

## I.    SUMMARY OF ARGUMENT

Defendants recognize the flaws in Amy Hutton's opinions, so they try to inoculate them from the Rule 702 admissibility standard by narrowing the opinions' scope and claiming Hutton has a "less demanding task" on rebuttal. Defendants' argument is that, as a rebuttal expert, Hutton can lodge any criticism—however divorced from Millennium's facts—and inject opinions under the guise of "alternatives" without subjecting them to the Court's gatekeeping function. That is not the law. Rebuttal testimony must meet the thresholds of expertise, reliability, and fit.[1]

Hutton's opinions about Austin Smith's adjustments to Millennium's Padres Projections must be grounded in the facts. Hutton did not consider the facts relating to Millennium in forming her opinions, and Defendants repeatedly claim that she did not need to do so.[2] Another flaw in Defendants' Opposition is their claim that, as a rebuttal expert, Hutton did not need to produce models or methods of her own, or to offer alternative calculations.[3] But, that is beside the point because Hutton has propounded models and methods and has offered alternative calculations of

---

[1] *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2021 U.S. Dist. LEXIS 107778, at *47 (E.D. Pa. June 9, 2021) (holding that, "like any expert witness," rebuttal experts must still demonstrate reliability under Rule 702); *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003) (defining *Daubert*'s test as consisting of "qualification, reliability and fit").

[2] *See, e.g.,* D.I. 282 at 21 (admitting that Hutton was not familiar with the DOJ investigation); at 23 (admitting that Hutton lacked an independent understanding of Medically Unlikely Edits or Millennium's knowledge thereof).

[3] *E.g.,* D.I. 282 at 8, 12; *see also, e.g.,* D.I. 282 at 12 n.7 ("Hutton's assignment was to assess *Austin Smith*'s methodologies … she had no obligation to apply any methodologies in support of one.") (emphasis in original), at 8 ("Hutton's role is solely to contradict or rebut evidence offered by Austin Smith.") (internal quotation marks omitted).

1

Millennium's WACC and solvency.[4] Having done so, those models, methods, and alternative calculations must be based on the application of accepted methodologies to relevant facts to survive a *Daubert* motion. Hutton's affirmative opinions are not.

Defendants' only response is to claim that the Trustee is fabricating Hutton's opinions.[5] That is incorrect. For example, Hutton calculates a 7.2% WACC. This is an alternative to the 14.8% WACC used by Austin Smith and Vantage Point Advisors ("VPA"). As is plain from her calculation of the 7.2% WACC in Appendix D of her Report, Hutton is applying her own standards and judgment, incorporating different inputs than used by Austin Smith, and offering an alternative opinion. Similarly, Hutton projects a fixed operating expense ratio of 38% for future expenses. Neither Millennium's management nor Austin Smith did that, as both used variable operating expenses. Further, Hutton "changes" Austin Smith's revenue projections to proffer alternative calculations of Millennium's solvency, as seen in Appendices E1, E2, F, H2A, H2B, H3A, and H3B and paragraphs 46, 50, 54, 65, 69, 72 and 95. If Hutton were simply criticizing Austin Smith, none of these alternative calculations would exist. Despite offering these alternatives, Hutton disowns each at her deposition.

In Opposition to the Motion, Defendants bore the burden to show that Hutton's opinions meet the admissibility requirements, but they fail to show they are reliable. Defendants instead claim that "Hutton did not affirmatively 'opine that Millennium was solvent or that the [Management] Projections were correctly stated" (Hutton MTE at 3), nor did she opine 'that 7.2% is the correct WACC.' (*id.*)."[6] Defendants fail to proffer any defense of her "illustrative" projections and valuations. This begs an entirely unanswered question: If Hutton is not opining

---

[4] *See, e.g.*, D.I. 256-2 (Hutton Report) at Exhibit 4, Appendix F.
[5] D.I. 282 at 7.
[6] D.I. 282 at 8.

that her calculations of a 7.2% WACC or her alternative projections and valuations result in reliable outputs, why should she be able to proffer those opinions at all? Defendants offer no answer, and it is axiomatic that an expert should not be permitted to present opinions that she does not espouse as reliable.

## II.    ARGUMENT

### A.    Defendants Gloss Over the Requirement that Rebuttal Expert Opinions Must Be Reliable.

To shield Hutton from scrutiny, Defendants stretch the law on rebuttal experts to the point of breaking. All experts, including rebuttal experts, must satisfy the admissibility requirements of Rule 702.[7] Not a single case cited by Defendants excuses a rebuttal expert from the strictures of Rule 702. The cases Defendants cite analyze rebuttal experts' opinions under Rule 702 and do not hold them to a lesser admissibility burden.[8] For example, Defendants cite *APEX Fin. Options, LLC v. Gilbertson*.[9] In *APEX*, the court excluded substantial portions of the rebuttal expert's opinion and, for the remainder, postponed ruling on admissibility until holding an *in limine* hearing.[10]

---

[7] *See Winn-Dixie Stores*, 2021 U.S. Dist. LEXIS 107778, at *47 (holding that, "like any expert witness," rebuttal experts must be reliable under Rule 702); *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019) ("a rebuttal expert is still subject to the scrutiny of *Daubert* and must offer both relevant and reliable opinions").

[8] *Aviva Sports, Inc., v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 834 (D. Minn. 2011) (applying Rule 702); *Winn-Dixie Stores, Inc.*, 2021 U.S. Dist. LEXIS 107778, at *45 (same); *APEX Fin. Options, LLC v. Gilbertson*, 2022 WL 613347, at *2 (D. Del. Mar. 1, 2022) (same).

[9] 2022 WL 613347, at *3.

[10] *Aviva Sports, Inc.*,  and *Winn-Dixie Stores, Inc.* are likewise unhelpful to Defendants. In *Winn-Dixie*, the court recognized that a rebuttal expert need not offer alternative methods, but her opinions had to comply with Rule 702's standard. 2021 U.S. Dist. LEXIS 107778, at *14. In *Aviva*, the movant's *only* criticism was that the rebuttal expert did not offer an alternative methodology. Here, the Trustee is not objecting to Hutton's failure to provide an alternative methodology, but that both her criticisms and her alternative methodologies are not fit to, or based upon, sufficient facts.

**B.     Defendants Do Not Defend Multiple Affirmative Opinions by Hutton that Should Be Excluded.**

Defendants claim that Hutton is only providing rebuttal opinions and do not defend her affirmative opinions.  Their cabining of the scope of her opinions means the Motion should be granted as to Hutton's affirmative calculations of the 7.2% WACC and of her alternative valuations of Millennium. If Hutton's role is only to respond to Austin Smith's opinions, as Defendants claim, then all of her calculations, projections, and valuations that Defendants do not defend should be struck. This includes:

- **7.2% WACC** (*see* Hutton Report Appendix D (calculating 7.2% WACC), paragraph 42 (applying new WACC to balance sheet test), and paragraph 104 (applying new WACC for capital adequacy test)): As described below, Hutton's calculation of an alternative WACC of 7.2% is an affirmative opinion that she does not claim is accurate.

- **Arrangers'[11] WACCs** (*see* Hutton Report Exhibit 3 and paragraph 33): Defendants disavow that Hutton said anything affirmative about the Arrangers' WACCs, but that is not true. Hutton purports to determine the average WACC used by Arrangers of the 2014 Transaction. As described below, Hutton did not verify the reliability of the methodologies employed by the Arrangers.

- **Changes to Projections and Alternative Valuations** (*see* Hutton Report Appendices E1, E2, F, H2A, H2B, H3A, H3B; and paragraphs 46, 50, 54, 65, 69, 72 and 95[12]): Hutton labels her changes to Austin Smith's projections "illustrative" and specifically disavows analyzing the reliability of her inputs or outputs. As discussed below, Defendants do not defend the reliability of Hutton's projections or alternative valuations of Millennium.

For each of these opinions, Hutton specifically disavowed that they resulted in a correct WACC, projections, or valuations.[13] Defendants do not claim the opinions are reliable, and in fact disclaim

---

[11] "Arrangers" refers to the Defendant who underwrote the 2014 Transaction.

[12] D.I. 256-2 at ¶¶ 46 ("modifying" operating expenses), 50 (DOJ settlement), 54 (emerging opportunities), 65 (specimen volume growth rate), 67 (MUE denials), 69 (POC Test Cup program), 72 (custom profiles), and 95 (capital adequacy test).

[13] Ex. 1 (Hutton Tr.) at 82:25–87:16 (MUE denials), 102:21–110:4 (POCT), 161:13–162:12 (Arrangers' WACCs), 215:18–216:15 (operating expenses), 249:20–250:16 (DOJ Settlement), 269:15–270:9 (emerging opportunities), 286:23–287:8 (custom profiles), 299:2–7 (volume growth); (D.I. 256-3, Hutton Tr.) at 205:6–207:10 (7.2% WACC).

that Hutton needed to investigate her inputs or have the opinion that her WACC, projections, or valuations were reliable.[14]

Defendants try to deflect and criticize the Trustee's Motion by claiming that Hutton did not affirmatively change or alter Austin Smith's projections or valuation.[15] But Hutton's report contradicts Defendants' claims. Hutton states: "I refer to the *changes* described above as modifications to Ms. Austin Smith's adjustments."[16] Her report contains at least seven such changes and she applies those changes in numerous calculations of Millennium's value.[17] Hutton claims that those values are merely "illustrative," meaning that they do not represent her expert opinion of what those valuations should be.[18] But, if they are not her actual opinion, then there is no basis under Rule 702 or *Daubert* for them to be presented to the fact-finder.

### C.    The Flaws in Hutton's Work Go to Admissibility, Not Just Weight.

While Defendants repeatedly assert that these problems with Hutton's analysis go to weight, not admissibility, this backstop argument is inconsistent with case law.[19] Unlike *Sun Pharma Global Fze v. Lupin Ltd.*,[20] this is not a case where the Trustee is moving to exclude an

---

[14] *See* D.I. 282 at 7–8, 10–11.

[15] D.I. 282 at 8.

[16] D.I. 256-2 (Hutton Report) Exhibit 1 at n.2, Appendix E1 at n.2 (emphasis added).

[17] *See, e.g.*, D.I. 256-2 (Hutton Report) at ¶¶ 14, 32, 37 n.70, 42, 46, 46 n.96, 50, 54, 65, 67, 69, 72, 95, Exhibit 1, Exhibit 4, Exhibit 5A, Exhibit 5B, Exhibit 5C, Appendix E1. Sometimes Hutton "restores" the management projections for which she expressly disavows any opinion; sometimes she adopts her own estimates. Either way, neither she nor Defendants claim the resulting figures are accurate.

[18] *See* footnote 13, *supra*.

[19] *See, e.g., R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2019 U.S. Dist. LEXIS 198035, at *33–35 (M.D. Pa. Nov. 15, 2019) (excluding rebuttal opinion that was not based on facts of the case); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("At a minimum … rebuttal experts must meet *Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony."); *Rondor Music Int'l Inc. v. TVT Records LLC*, CV 05-2909-JTL, 2006 U.S. Dist. LEXIS 97118, at *5–14 (C.D. Cal. Aug. 21, 2006) (excluding testimony where the rebuttal expert was unable to articulate specific process or methodology).

[20] 2021 WL 856886, at *7 (D.N.J. 2021).

expert because of the results of her analysis. Rather, the Trustee moves to exclude Hutton's testimony based on her failure to apply a reliable methodology or rely on the facts in the record.[21]

### D.     Defendants' Claim that Hutton Did Not Need to Perform a Reliable WACC Calculation is Flawed.

#### 1.     Hutton Calculates a WACC that Neither She Nor Anybody Else, Including Defendants, Claim is Reliable.

Defendants imply that, because Hutton is offering a rebuttal opinion, she need not propose a WACC that she considers reliable.[22] Defendants' framing is overstated; Hutton can criticize Austin Smith's 14.8% WACC without providing an alternative WACC, but Hutton calculates her own alternative 7.2% WACC. Having done so, Hutton is obligated to ensure it is reliable. Neither she, nor Defendants, claim 7.2% is a reliable WACC.

Defendants claim that Hutton's 7.2% WACC simply corrects Austin Smith's WACC, but Hutton cannot "correct" Austin Smith's WACC if Hutton cannot opine that 7.2% is reliable and correct. Moreover, Hutton includes her own inputs (*e.g.,* comparable companies), selects her own beta, uses her own debt-to-equity target ratio, and does not apply any adjustments to her WACC to account for differences from the comparable companies she used.[23] At each step, Hutton

---

[21] Defendants cite *MPSK Oak Grove LLC v. Venuto*, 2016 WL 3566720 (D.N.J. 2016), but that case merely shows the court exercising its *Daubert* gatekeeping function.

[22] D.I. 282 at 7, 8, 11, 12 at n.7.

[23] *See* D.I. 256-2 (Hutton Report) at ¶¶ 32–42, Exhibit 4, Appendix D, Appendix F. In their Opposition, Defendants again incorrectly claim that Austin Smith did not review VPA's WACC calculation. D.I. 282 at 16 n.12. But as noted in the Trustee's opposition to Defendants' motion to strike portions of Austin Smith's report, D.I. 284 at 9, Hutton simply starts from a different source document than Austin Smith. Hutton sources her inputs from a "draft" spreadsheet showing a draft WACC calculation for the solvency analysis. Austin Smith cited to a final contemporaneous WACC calculation by VPA for Millennium's 409A valuation, which was identical to the final WACC calculation by VPA for the fair market value analysis of the 45% membership interest in Millennium Lab Holdings II, LLC. *See* D.I. 252-67 (Draft Solvency Analysis); D.I. 285 at Exhibit 6 (Final 409A Valuation); Ex. 8 (Final 45% Interest Valuation). VPA was conducting numerous valuations for Millennium contemporaneous with the 2014 Transaction, and the WACC calculation in the final valuation for the 409A and 45% membership interest and the draft solvency

exercises judgment. Yet, Hutton specifically and expressly disavows in her deposition testimony that her 7.2% WACC and her judgment calls are correct.[24] Nonetheless, she applies her 7.2% WACC at least 19 times in her report.[25]

Defendants attempt to deflect by claiming that Hutton did not need to assess the reliability of the five companies she used to calculate her WACC because "Hutton did not identify them— Austin Smith did."[26] Defendants' claim epitomizes why Hutton's opinion is unreliable. Austin Smith expressly determined that those five companies were "not sufficiently comparable" to perform the analysis Hutton performed.[27] Therefore, Hutton uses five companies as the basis for her WACC calculation that neither Hutton nor Austin Smith opined offers a reliable foundation.

Defendants also attempt to save Hutton's removal of the Company Specific Risk Premium ("CSRP") from Austin Smith's WACC.[28] Defendants suggest that Hutton simply offered an abstract critique of Austin Smith's inclusion of a CSRP.[29] In fact, Hutton removed it from the WACC without making any other compensating adjustments, even though she acknowledged that *some type* of adjustment is necessary.[30] Defendants do not contest that Hutton's basis for removing the CSRP from the WACC—that its use is *never* appropriate—is contradicted by the CSRP's

valuation are all identical except for the cost of debt in the draft calculations that Hutton relied upon, which does not impact the 14.8% WACC calculated by VPA for all three of these valuations.

[24] D.I. 256-3 (Hutton Tr.) at 205:6–207:10.

[25] *See* D.I. 256-2 (Hutton Report) at ¶¶ 14, 27, 32–33, 37 n.70, 42, 46, 50, 54, 65, 67, 69, 72, 104, Exhibit 1, Exhibit 3, Exhibit 4, Appendix D, Appendix E1, Appendix F.

[26] D.I. 282 at 11.

[27] D.I. 256-1 (YAS Report) at ¶ 148 n.285.

[28] Defendants claim Austin Smith never explained that the CSRP was used to account for the lack of comparable public companies. D.I. 282 at 14. That is wrong. Austin Smith explained that a WACC excluding the CSRP would be inappropriately low. D.I. 256-1 (YAS Report) at ¶ 148 n.285.

[29] D.I. 282 at 12–13.

[30] D.I. 256-3 (Hutton Tr.) at 117:15–120:11; Ex. 1 (Hutton Tr.) at 131:7–133:24.

acceptance by courts and practitioners.[31] Moreover, Defendants' attempt to deflect Hutton's prior use of a CSRP in another case by claiming she was not calculating a WACC is contradicted by the fact that Hutton repeatedly identified it as a WACC in her declaration in that case.[32] Similarly, Defendants do not dispute that Hutton's opinion was that a Small Company Risk Premium ("SCRP") is *never* appropriate.[33] Yet, they acknowledge that the case law has recognized its use can be proper,[34] and ignore that it is widely used by practitioners.[35]

Defendants are left to argue that the Trustee's criticisms "go to weight, not admissibility,"[36] but they do not cite any case supporting that proposition. For Hutton's SCRP analysis, Defendants cite *Godreau-Rivera v. Coloplast Corp.*, but that case did not involve a situation like the one here, where Hutton's only opinion with respect to the SCRP—that it is *never* appropriate—simply cannot be squared with the substantial precedent, literature, and practice showing its widespread

---

[31] *See* D.I. 256 at 14–16 (collecting cases). Defendants attempt to discount *In re Allonhill* by claiming the problem was simply "that the expert did not adjust his valuation at all to account for financial distress." D.I. 282 at 14 n.9. That reading is contradicted by the opinion, which specifically addresses the CSRP and faults the expert for failing to include it. Regardless, Hutton also did not adjust her calculation to account for Millennium's financial distress. Defendants also cite to *In re Orchard Enters. Inc.* to support Hutton's position. D.I. 282 at 13–14 (citing 2012 WL 2923305, at *19 (Del. Ch. July 18, 2012)). But, as the Trustee has already briefed in its Opposition to the Motion to Strike, that decision does not hold that a CSRP is never reliable, as Defendants contend. D.I. 284 at 26.

[32] D.I. 256 at 15–16. Defendants assert that Austin Smith's inclusion of a CSRP and her adjustments to the Padres Projections were somehow improper because they were redundant and caused double-couting. D.I. 282 at 14–15. Apart from the fact that Hutton did not offer that reasoning in her report, this ignores that the CSRP and revenue adjustments account for different issues—the former to provide for an appropriate discount rate given the lack of comparable public companies and the latter to account for knowable facts omitted from the Padres Projections.

[33] D.I. 256-1 (YAS Report) at ¶ 26.

[34] D.I. 282 at 15.

[35] *See, e.g.*, D.I. 256-3 (Hutton Tr.) at 203:19–21, 210:19; D.I. 256-36 (Holthausen & Zmijewski, Corporate Valuation) at 327.

[36] D.I. 282 at 9–10.

use and acceptance.[37] Defendants also cite *Leonard v. Stemtech International Inc.* to support Hutton, but it does not help their position. On appeal, the *Leonard* court held that "[i]t is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record," but concluded that the district court did not abuse its discretion in denying a *Daubert* motion because the expert had applied a recognized methodology to the facts he collected. [38] The exact opposite is true here. As Defendants admit, Hutton did not identify comparable companies, and there is no foundation in the record to assume that they are comparable. Moreover, Hutton herself does not claim the 7.2% WACC is reliable or correct. Thus, Hutton's 7.2% WACC and each of her valuation opinions that depend on it should be excluded.

Finally, Defendants also claim that Hutton never "attempted to buttress" her 7.2% WACC by citing to the Arrangers' analysis.[39] This claim is belied by Hutton's own words: "I also note that the discount rates estimated by the Arrangers are consistent with the corrected WACC of 7.2%."[40] While she points to the Arrangers' WACCs, she did not attempt to determine their reliability, as shown by the Motion and as is undisputed by Defendants in the Opposition.[41] Defendants assert that Hutton can chart and average the Arrangers' WACCs without determining that the Arrangers' WACCs are reliable because she is only pointing out a further step that Austin Smith could have taken.[42] But, that is *not* what Hutton said, and even if it were, that criticism must still be reliable; and Hutton is not permitted to present the Arrangers' WACCs as if they are reliable

---

[37] 2022 WL 1120371, at *10 (D.Del. Apr. 14, 2022). Defendants claim that Hutton was not obliged to justify her adjustment to the beta, D.I. 282 at 12, but that flies in the face of the basic requirement that experts must provide a reliable basis for their opinions.

[38] 834 F.3d at 391.

[39] D.I. 282 at 16.

[40] D.I. 256-2 (Hutton Report) at ¶ 33.

[41] D.I. 282 at 16 ("Hutton had no obligation to 'assess' those WACCs or the underlying calculations ….").

[42] *Id.*

when she specifically disclaims this. Thus, Hutton's analysis of the Arrangers' WACCs should be excluded.

### E. Defendants Misrepresent Hutton's Operating Expense Margin.

To arrive at her valuations of Millennium, Hutton inputs a fixed 38% operating expense margin.[43] This opinion goes beyond simple criticism of Austin Smith's variable operating expense ratio and substitutes Hutton's own fixed operating margin to offer an opinion on valuation.[44] In the Opposition, Defendants do not claim Hutton's 38% operating expense margin is reliable, do not defend her conversion of variable expenses to fixed expenses, and do not defend her reliance on a 2015 settlement presentation that did not purport to be a business plan.[45] Instead, Defendants claim that Hutton was merely criticizing Austin Smith. But that again is not true: if it were, there would be no need for Hutton to pick her own 38% fixed operating expense margin.

Defendants also claim that 38% was not Hutton's operating expense margin because it was calculated by Austin Smith.[46] This cannot be reconciled with either Hutton's or Austin Smith's opinion. Austin Smith calculated a margin that varied annually.[47] The variable rate happened to equal 38% for one year out of eight years in the projection.[48] Hutton selected the lowest data point out of the eight and uniformly applied that one data point across all the years.[49] Thus, Defendants' attempt to claim that Hutton's methodology is not flawed because 38% was calculated by Austin Smith is baseless and reveals the indefensibility of Hutton's opinion.

---

[43] D.I. 256-2 (Hutton Report) at ¶ 46 n.96, Exhibit 1 n.7.
[44] *See* D.I. 256-2 (Hutton Report) Exhibit 1 n.7; *see also infra* Section II.B.
[45] These bases for exclusion were specifically raised in the Motion.  D.I. 256 at 19–21.
[46] D.I. 282 at 16–17.
[47] D.I. 256-1 (YAS Report) at ¶ 136.
[48] D.I. 256-2 (Hutton Report) at ¶ 46.
[49] D.I. 286 at Exhibit 4.

Finally, Defendants do not claim that Hutton's reliance on a 2015 document to show Millennium could reduce expenses is reliable.[50] As set forth in the Motion, that document stated it was not for forecasting purposes.[51] Neither Hutton nor Defendants claim that the facts contained in that document are appropriate for use. Defendants' attempt to deflect by claiming "logical gymnastics" does not address the Plaintiff's criticism or render Hutton's opinion reliable.[52] Without that document, Hutton has no documentary support for her opinion at all.

### F.    Hutton Puts Her Stamp on Additional Calculations That Neither She Nor Defendants Claim to Be Reliable.

As part of her opinions, Hutton "restores" management projections by partially reversing certain of Austin Smith's adjustments to arrive at her "illustrative" valuations. Hutton does this for revenue related to emerging opportunities, MUE denials, the POC Test Cup program, and custom profiles. Many of Hutton's criticisms are entirely divorced from the facts of the case. Defendants suggest that, regardless of the facts, it was proper for Hutton to assume the reliability of management's projections without analyzing whether such projections were in fact accurate.[53] But, Hutton does not say she assumed management's projections are correct; instead, she specifically disavows having any opinion about them at all.[54] Hutton does not claim the resulting alternative valuations are reliable, and in their Opposition Defendants do not argue for their admissibility.

---

[50] Defendants cite *SL EC, LLC v. Ashley Energy, LLC*, 2021 WL 5112943, at *3 (E.D. Mo. Nov. 2, 2021) for the proposition that a rebuttal expert can point out evidence that another expert failed to consider. That misses the point. Hutton opined that Austin Smith should have adjusted the projected expenses based on an unreliable post-transaction document that Hutton was not familiar with.

[51] D.I. 256 at 20; D.I. 256-2 (Hutton Report) at ¶ 45 n.95.

[52] D.I. 282 at 18.

[53] D.I. 282 at 8.

[54] D.I. 256-3 (Hutton Tr.) at 45:6–51:23.

### 1.   Defendants Admit that Hutton Did Not Verify the Inputs to the Emerging Opportunities Calculation She Made.

Defendants claim Hutton "never opined that management's projections of emerging opportunities revenues were correct, and thus she had no reason to offer an opinion on the appropriate standards for including such projection in a valuation."[55] But Hutton expressly "restored" management's emerging opportunities in the projections to offer an opinion on what the valuation would be with them "restored."[56] Defendants simply ignore that Hutton used a revenue projection and calculated a valuation without verifying their reliability.

### 2.   Defendants Misrepresent Hutton's Opinion on Austin Smith's Growth Rate Projections.

Defendants accuse the Trustee of misrepresenting that Hutton claims Austin Smith relies on one data point in forming her specimen growth rate projections.[57] Defendants' accusation is unfounded. Hutton's Report states "Austin Smith relies on *one* data point (change from 4Q2013 to 1Q2014) to extract expectations about Millennium's long-term performance."[58] In their Opposition, Defendants now try to walk back that statement, but it is the foundation of Hutton's opinion.  Because it does not engage with the actual opinion of Austin Smith she is rebutting, it should be excluded for lack of fit.[59] Defendants' citation to *Krys v. Aaron* misses the point.[60] There, the court declined to exclude an expert who relied on disputed facts. Here, Hutton did not rely on disputed facts; she bases her opinion on a strawman claim about Austin Smith's methodology. In addition, Defendants claim that "Hutton did not estimate future growth."[61] However, Hutton

---

[55] D.I. 282 at 18.
[56] D.I. 256-2 (Hutton Report) at ¶ 54.
[57] D.I. 282 at 19.
[58] D.I. 256-2 (Hutton Report) at ¶ 61; *see also id.* at ¶ 59.
[59] *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) (excluding expert report presented as a rebuttal because the report did not actually engage with the other opinions).
[60] 112 F.Supp.3d 181, 199 (D.N.J. 2015).
[61] D.I. 282 at 20.

calculates Millennium's valuation based on growth rates she inputs, and it is incumbent on Hutton and Defendants to show it is based on reliable foundation.[62] Neither does so.

### 3. Defendants' Response on MUE Denials Does Not Address Plaintiff's Challenge to Hutton's Opinions.

For MUE denials, Defendants misstate Hutton's testimony and Austin Smith's analysis. Defendants cite an extensive passage of Hutton's deposition to claim that she did not need to understand the facts because she is not a fact witness. Although not a fact witness, Hutton does need to ground her opinions on the facts of the case.[63] And Hutton's criticism of Austin Smith for "rely[ing] on hindsight" with respect to MUE Denials is flawed for this reason.[64] Unlike in *Helios Software, LLC v. Awareness Techs., Inc.*, where the expert simply failed to name certain materials he reviewed, the facts that Hutton admitted she was unaware, including the fact that Millennium's management was aware of the MUE denials as early as February 2014, go to the heart of her opinion that Austin Smith relied on "hindsight."[65] Indeed, the passage Defendants quote shows that Hutton did not "undertake any independent investigation to find out those facts."[66] And, Defendants do not address that Hutton's opinions on MUE denials were not reliable for this reason.

### 4. Defendants' Argument Regarding the POC Test Cup Program Wholly Ignores the Extent of Hutton's Opinions.

Defendants misstate Hutton's analysis regarding the POC Test Cup Program. Hutton states that "Ms. Austin Smith disregards information that indicates that, at the time of the 2014 Transaction, management expected to prevail on the Ameritox litigation"; and, as a result, Hutton

---

[62] D.I. 256-2 (Hutton Report) at ¶ 65.

[63] *See In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 373 (Bankr. D. Del. 2006) ("[I]f the factual basis of an expert's opinion is so fundamentally unsupported because the expert fully relies on altered facts and speculation, or fails to consider relevant facts in reaching a conclusion, the expert's opinion can offer no assistance to the trier of fact.").

[64] D.I. 256-2 (Hutton Report) at ¶ 66.

[65] 2015 WL 12806482 (D. Del. 2015).

[66] D.I. 282 at 22.

fully "restores" that revenue.[67] The Trustee moved to exclude this opinion because it had no basis in fact.[68] Having no alternative, Defendants now claim that Hutton's opinion is only about the date of one spreadsheet.[69] That incorrect criticism does not justify Hutton's restoration of management projections that neither she nor Defendants claim are reliable.

### 5. Defendants Do Not Defend Hutton's Changes to the Projections Based on the Foreseeable DOJ Settlement.

Hutton opined that Austin Smith "failed to show" the DOJ settlement was foreseeable that the reputational impact of it would cause testing volumes to fall. Hutton cannot reliably offer this criticism without investigating what Austin Smith "showed."[70] Yet, Hutton admits she did not understand the facts relevant to Austin Smith's opinions or review the documents Austin Smith cited. In their Opposition, Defendants claim that Hutton was free to postulate that Austin Smith did not base her opinions on sufficient data without knowing what Austin Smith had done, citing to *Bondach v. Faust*.[71] Unlike the expert in *Bondach*, Hutton did not assume a particular version of a disputed event; instead, she opined that Austin Smith provides no "reliable basis" for her conclusion without investigating that basis. And, neither Hutton nor Defendants offer any argument that Hutton's adjustment to the projections relating to the DOJ settlement are reliable.[72]

### 6. Defendants' Attempt to Deflect from Hutton's Opinions Related to Custom Profiles.

For Custom Profiles, Defendants claim that Hutton was free to postulate additional evidence that she would want to see from Austin Smith (what that would be, Hutton does not

---

[67] D.I. 256-2 (Hutton Report) at ¶¶ 68–69.
[68] D.I. 256 at 27–28.
[69] D.I. 282 at 24.
[70] *See In re Nellson Nutraceutical, Inc.*, 356 B.R. at 373.
[71] D.I. 282 at 22 (citing 2011 WL 3816998, at *3 (E.D. Pa. Aug. 30, 2011)).
[72] *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (holding that an expert's conclusions must "reliably flow from the facts known to the expert and the methodology used").

actually postulate).[73] But, Hutton goes farther, restoring management's estimates.[74] Defendants do not offer any defense of those opinions. Defendants' attempt to rescue Hutton's groundless criticism of Austin Smith's use of Medicare billing as a proxy for commercial billing also fails. Austin Smith provided evidence supporting the fact that commercial payors followed Medicare billing trends, and Defendants' other expert agreed.[75]

> **G.     Defendants Fail to Show Hutton's Opinions on Rating Agencies or the Other Solvency Tests are Reliable.**

Defendants concede that the cornerstone of Hutton's capital adequacy and ability to pay opinions are her criticisms of Austin Smith's adjustments to the Padres Projections.[76] Accordingly, Hutton's testimony on these subjects should be excluded for the reasons already discussed. Moreover, Defendants' only defense of Hutton's "separate observation" regarding credit agency ratings is that she had no obligation to actually confirm that these ratings were reliable before opining on them, entirely failing to contest the record evidence that these ratings were based on misleading information provided by Millennium's management and Defendants.[77]

## III.    CONCLUSION

For the above reasons, and those set forth in the Motion, Plaintiff respectfully requests that the Court grant the Motion and exclude the opinions of Amy Hutton.

---

[73] D.I. 282 at 24–25.

[74] D.I. 256-2 (Hutton Report) at ¶ 72.

[75] D.I. 256-1 (YAS Report) at ¶¶ 57–61; Ex. 2 (Matevich Tr.) at 51–62:15 ("[O]ftentimes commercial payors will follow the lead of Medicare with regards to reimbursements.").

[76] D.I. 282 at 26.

[77] D.I. 282 at 26–27; D.I. 256 at 30.

15

Dated: November 23, 2022

Respectfully submitted,

By: */s/ G. David Dean*

G. David Dean (No. 6403)
COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 651-2012
ddean@coleschotz.com

Kyle A. Lonergan (*pro hac vice*)
Joshua J. Newcomer (*pro hac vice*)
Grant L. Johnson (*pro hac vice*)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York, 10001-8603
(212) 402-9400
klonergan@mckoolsmith.com
jnewcomer@mckoolSmith.com
gjohnson@mckoolSmith.com

***Attorneys for Plaintiff***

16