# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MILLENNIUM LAB HOLDINGS II, LLC, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-12284 (LSS) |
| MARC S. KIRSCHNER solely in his capacity as TRUSTEE OF THE MILLENNIUM CORPORATE CLAIM TRUST,<br><br>Plaintiff,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, N.A., CITIBANK N.A., BMO HARRIS BANK, N.A., and SUNTRUST BANK,<br><br>Defendants. | Adv. No. 17-51840 (LSS)<br><br>Re: Docket Nos. 247, 253 & 255 |

## OPINION

**Plaintiff's Motion for Partial Summary Judgment Regarding Defendants' Affirmative Defenses [Docket No. 247]**

**Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Proposed Expert Branka Matevich [Docket No. 253]**

**Plaintiff's *Daubert* Motion to Exclude the Testimony of Defendants' Proposed Expert Amy Hutton [Docket No. 255]**

On March 12, 2025, I issued that certain Opinion[1] denying Defendants' Motion for Summary Judgment and *Daubert* motion. Now, I turn to Plaintiff's motions.

---

[1] *Kirschner v. J.P. Morgan Chase Bank, N.A.*, Adv. No. 17-51840, 2025 WL 794311 (Bankr. D. Del. March 12, 2025).

By way of reminder, this is an action seeking to avoid and recover a $35.3 million arrangement fee paid by Debtor to Defendants in connection with the Dividend Recapitalization Transaction as either an actual or constructive fraudulent conveyance. The background, procedural posture and legal standard have been fully set forth in the Opinion. I adopt those sections here by this reference. I also adopt the defined terms in the Opinion.

I. **Trustee's Motion for Partial Summary Judgment Relating to Certain Affirmative Defenses**

Collectively, Defendants assert twenty-four defenses, all of which are the subject of Plaintiff's summary judgment motion. Nonetheless, all parties agreed that I need rule on only two: the "reasonable good faith" and "publicly available information" defenses.[2]

Rule 8(c)(1) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. . . ."[3] The rule lists eighteen separate affirmative defenses, but the list is not exhaustive. The rule does not provide guidance on what else might constitute an avoidance or defense.[4]

An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."[5] To determine whether something is a defense, courts look to "the

---

[2] Letter from Lara Samet Buchwald to the Court (Feb. 1, 2023), ECF No. 338.

[3] Fed. R. Civ. P. 8(c)(1).

[4] 2 *Moore's Federal Practice* § 8.08[5] (3d ed. 1997); *Sterten v. Option One Mortg. Corp. (In re Sterten)*, 546 F.3d 278, 284 (3d Cir. 2008) (discussing affirmative defenses in the context of waiver for failing to assert in answer).

[5] *Affirmative Defense*, Black's Law Dictionary (12th ed. 2024); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Savings, F.S.B.*, 28 F.3d 376 (3d Cir. 1994).

2

relationship between the defense in question and the plaintiff's primary case."[6] The governing substantive law informs this question.[7] Further, the court must distinguish between a defense and a general denial:

> When we are asking whether a particular defense is an affirmative defense, what we are really asking is whether that defense is adequately asserted merely by denying the allegations in the complaint, or whether more is required. To answer that question, we need to determine whether the defense notes issues not raised, even by implication, in the complaint.[8]

The determination is also informed by the purpose of the requirement to plead affirmative defenses: to avoid surprise and to provide the plaintiff an opportunity to respond.[9] Here, as both counts of the Complaint are brought under § 548, the Bankruptcy Code and federal law interpreting fraudulent conveyances informs the inquiry. The element of surprise is not a factor as each of the challenged defenses were raised.

### a. Reasonable Good Faith

Citi, BMOC and SunTrust each assert as a defense that they "acted reasonably and in good faith at all times based on all relevant facts and circumstances known by it at the time it so acted."[10] This defense is separate and apart from the § 548(c) defense each raises.[11]

---

[6] *Sterten*, 546 F.3d at 284.

[7] 2 *Moore's Federal Practice* § 8.08[5].

[8] *Sterten*, 546 F.3d at 284.

[9] *Sterten*, 546 F.3d at 285; 2 *Moore's Federal Practice* § 8.08[5].

[10] Def. Citibank, N.A.'s Answer and Affirm. Defenses to Pl.'s Compl. ¶ 125, ECF No. 62 ("Citi Answer"); Answer of Def. BMO Harris Bank, N.A. 18, ECF No. 64 ("BMOC Answer"); Def. SunTrust Bank's Answer & Defenses to Compl. 18, ECF No. 66 ("SunTrust Answer").

[11] Citi Answer ¶ 118 ("The payments were made to CBNA for value and in good faith and therefore CBNA has a lien on or may retain an interest in in the payments pursuant to the Bankruptcy Code, including 11 U.S.C. § 548(c), and applicable state law"); BMOC Answer 17 ("The Trustee's claims

3

Trustee argues that a defendant's "reasonable good faith" is an incomplete element of a § 548(c) defense.[12] Citi, BMOC and SunTrust respond that Trustee has failed to meet his burden of establishing their lack of entitlement to the good faith defense as a matter of law because Trustee cites no authority for such a proposition.[13] Trustee replies that Citi, BMOC and SunTrust ask him to prove a negative, which he cannot do because the purported defense is "not recognized as a defense to the cause of action."[14]

Whether a defense exists "is a question of law for the court and is particularly appropriate for resolution on a motion for summary judgment."[15] Indeed, "the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts . . . ."[16] "If a claimed affirmative defense is an

---

are barred, in whole or in part, because BMO Harris acted in good faith and payments made to BMO Harris were for value. Pursuant to 11 U.S.C. § 548(c), BMO Harris is entitled to retain the payments that would otherwise by avoidable under 11 U.S.C. § 548(a) or (b)."); SunTrust Answer 17 ("Plaintiff's claims are barred because the payments were made to SunTrust for value and in good faith and, therefore, SunTrust has a lien or may retain an interest in the payments pursuant to the Bankruptcy Code, including 11 U.S.C. § 548(c) and applicable state law.").

[12] Pl.'s Mem. of Law in Supp. of Its Mot. for Partial Summ. J. Regarding Defs.' Affirm. Defenses 23-24, ECF No. 247-1 ("Pl. Summ. J. Br.").

[13] Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. Regarding Defs.' Affirm. Defenses 10-11, ECF No. 278 (Defs.' Summ. J. Br.").

[14] Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. Regarding Defs.' Affirm. Defenses 2 (quoting *United States v. Gilead Scis., Inc.*, 515 F. Supp. 3d 241, 248 (D. Del. 2021)), ECF No. 298.

[15] 10B *Wright & Miller's Federal Practice & Procedure* § 2734 n.6 (4th ed. 2025) (citing *Kenney v. Scripps Howard Broadcasting Co.*, 259 F.3d 922 (8th Cir. 2001)).

[16] 10A *Wright & Miller's Federal Practice & Procedure* § 2727.2 (quoting *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968)).

4

insufficient defense, or even if proved it is not a material fact, summary judgment may be granted."[17]

At this stage there are facts from which I can infer, when viewing the facts in the light most favorable to Defendants, that they received the Arrangement Fee in good faith. However, such a factual finding alone would not entitle them to a ruling in their favor. As Trustee contends, good faith is just one part of the enumerated statutory defense/remedy embodied in § 548(c).[18] Section 548 does not suggest other defenses exist to defeat a claim for fraudulent transfer and Citi, BMOC and SunTrust do not point to any other provision of the Code or to decisional law providing for their asserted "reasonable good faith" defense.[19]

Further, Citi, BMOC and SunTrust argue that this defense "defeats" Trustee's allegations regarding evidence of Debtor's state of mind in entering into the Dividend Recapitalization Transaction.[20] In essence, this "defense" is a denial of Trustee's allegations that the Dividend Recapitalization Transaction constitutes an actual fraudulent conveyance.

---

[17] 10B *Wright & Miller's Federal Practice and Procedure* § 2734 n.3 (citing *Off. & Prof. Emp. Int'l Union, Local. No. 9, AFL-CIO v. Allied Indus. Workers Int'l Union*, 397 F. Supp. 688 (E.D. Wis. 1975), *aff'd without opinion*, 535 F.2d 1257 (7th Cir. 1976)).

[18] 11 U.S.C. § 548(c) provides

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

[19] *See, e.g.*, 11 U.S.C. § 546 (limitations on avoiding powers).

[20] Defs.' Summ. J. Br. 11.

In the absence of any cited decisional authority or even any analogous case law, I am not inclined to create a new defense specific to a Code-created cause of action.[21] Moreover, Citi, BMOC and SunTrust essentially concede this "defense" is more properly categorized as a denial.[22] Therefore, partial summary judgment is granted in favor of Trustee on the purported "reasonable good faith" defense.

### b. Publicly Available Information

Citi and BMOC also assert as a defense that "[Trustee] is not entitled to any recovery because the substance of the allegedly omitted or misstated information was disclosed and publicly available."[23]

Trustee argues that "publicly available information" is not an affirmative defense, noting that he has been unable to identify any federal court decision recognizing it as such.[24] Trustee further contends that the public availability of any information is just one of many factors that could combine to negate an actual fraudulent transfer claim, but it is not sufficient to defeat such a claim alone.

Citi and BMOC cite *Kuptez v. Wolf*[25] to suggest that the public nature of the transaction is an absolute bar to recovery on a fraudulent conveyance. But, the availability of financial information about the debtor (to post-transaction creditors) was one of several

---

[21] Congress could have created defenses. *Compare* 11 U.S.C. § 548 *with* 11 U.S.C. § 547(c) (providing exhaustive list of defenses to a preference action).

[22] Defs.' Summ. J. Br. 11.

[23] Citi Answer ¶ 127; BMOC Answer 18.

[24] Pl. Summ. J. Br. 24.

[25] 845 F.2d 842 (9th Cir. 1988).

6

factors the court considered in its analysis—not a lone determining factor.[26] More to the point, Citi and BMOC contend that "one of [Trustee]'s core theories in this litigation is that certain facts were concealed from Millennium's creditors" such that Trustee has put the disclosure of information regarding the Dividend Recapitalization Transaction "at issue" and therefore the public availability of the information is "relevant" to the case.[27] These contentions are a tacit acknowledgement that this "defense" is actually a denial of Trustee's affirmative case.

That the Dividend Recapitalization Transaction or aspects of it (or the existence of certain litigation) may have been public is not dispositive of whether the Dividend Recapitalization Transaction was an actual or constructive fraudulent conveyance; it is only one of many factors the Court will consider at trial. For these reasons, and because the "publicly available information" defense is actually a general denial of Trustee's claims, summary judgment is granted in favor of Trustee on the purported "publicly available information" defense.

---

[26] *Id.* at 847-850. In that vein, I note that secrecy/concealment is one of the badges of fraud often used to show actual intent to defraud. The badges of fraud include (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction. *Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009). "No single badge of fraud is dispositive, and the court may consider other factors." *Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504, 509 (Bankr. D. Del. 2012).

[27] Defs.' Summ. J. Br. 9-10.

### II. Trustee's Motions to Exclude the Testimony of Defendants' Experts

Trustee filed separate *Daubert* motions seeking to exclude the testimony of Branka Matevich[28] and Amy Hutton.[29]

#### A. Branka Matevich

Defendants retained Branka Matevich to respond to Austin Smith's expert report. Matevich holds a bachelor's degree in psychology from Loyola University and an MBA from North Central College. Matevich's professional experience spans over forty years, the last twelve of which she spent focusing on drug testing.[30] Her experience involves hospital and non-hospital laboratories and encompasses a variety of roles ranging from medical technician performing tests to CEO of a clinical laboratory. For a time, Matevich served as Director of Strategy and Solutions at Quest Diagnostics Inc.—one of the comparable companies identified by both Vantage Point and Austin Smith.[31] She considers herself an expert in the clinical lab industry with a recent focus on UDT toxicology lab testing.[32]

Matevich evaluates Austin Smith's modifications to the management's projections. She focuses on Austin Smith's adjustments relating to the specimen volume growth rate, commercial payor custom profiles, medically unlikely edits and the local coverage

---

[28] Pl.'s *Daubert* Mot. to Exclude the Test. of Defs.' Proposed Expert Branka Matevich, ECF No. 253.

[29] Pl.'s *Daubert* Mot. to Exclude the Test. of Defs.' Proposed Expert Amy Hutton, ECF No. 255.

[30] Expert Report of Branka Matevich 1-2, App. A, ECF No. 254-3 ("Matevich Report").

[31] Matevich Report 1; Decl. of Grant L. Johnson in Opp'n to Defs.' *Daubert* Mot. to Exclude the Test. Of Pl.'s Proposed Expert Yvette Austin Smith Ex. 1 (Expert Report of Yvette Austin Smith), at 96, ECF No. 285-1 ("Austin Smith Report"); Johnson Decl. Ex. 6 (Vantage Point Advisors Report), at VP_ML_00015735 (Guideline Public Company Summary), ECF No. 285-1.

[32] Matevich Deposition Excerpts 32:6-18; 37:3-21, ECF No. 254-4.

determination.[33] Matevich brings her experience to bear on her analysis to opine that Austin Smith's assumptions (and, therefore, adjustments) are unsupported by the facts and derived from misunderstandings and mischaracterizations of the laboratory services industry.[34] For example, Matevich explains that Austin Smith's reduction to net revenue per specimen based on the possibility of future Medicare denials does not account for Millennium's ability to adapt to the Medicare changes and reduce its billing practices in the future in order to recover a portion of similar claims instead of nothing.[35] As another example, Matevich states Austin Smith's adjustments to medically unlikely edits in Medicare claims evince a misunderstanding of Medicare's claim review and appeals process.[36]

In moving to exclude Matevich's testimony, Trustee contends Matevich's experience does not make her an expert in the areas on which she opines and her opinions exceed her expertise. Trustee also argues that Matevich's opinions are based on unreliable methodologies and insufficient facts specific to Millennium's business operations.[37] Defendants counter that Trustee's arguments go to weight not admissibility and assert

---

[33] Matevich Report 3-4.

[34] *Id.* at 3-4; *see also id.* at 3 ("Ms. Austin Smith's assumptions and resulting adjustments are flawed for a variety of reasons, including because they rely on misunderstandings and mischaracterizations of the laboratory services industry, and are inconsistent with my experience preparing financial projections for laboratory services companies.").

[35] *Id.* at 4, 29-31 ("In my experience, once a laboratory is aware that claims are denied and are in fact non-recoverable, the laboratory would adapt its practices to ensure that MUE limits are not breached in future claims.").

[36] *Id.* at 4.

[37] Pl.'s Opening Br. in Supp. of Its *Daubert* Mot. to Exclude the Test. of Defs.' Expert Branka Matevich 3, ECF No. 254.

Matevich is qualified to opine that Austin Smith did not appropriately consider the relevant facts in the industry when making her adjustments to Millennium's projections.[38] In reply, Trustee contends Defendants failed to address his arguments and narrowed the scope of Matevich's opinion.[39]

I will not exclude Matevich's testimony. Rather, I conclude that Defendants are correct—the question is how much weight Matevich's testimony should be given. Matevich's experience in the industry supplies her with the credentials to qualify her as an expert in the clinical laboratory industry, generally. As to Trustee's specific concerns that Matevich's testimony is based in facts inconsistent with Millennium's business operations, this can be explored on cross-examination with the benefit of the record made. Further, to the extent Matevich attempts to narrow or change her opinion and/or the basis of it, this, too, can be addressed by the Court in the trial context.[40]

**B.    Amy Hutton**

Defendants also retained Amy Hutton to respond to Austin Smith's report. Hutton has a Ph.D. in business administration from the Simon Business School at the University of Rochester. She is a professor of business administration at Boston College's Carroll School of Management and previously served as an associate professor at the Tuck School of

---

[38] Defs.' Mem. of Law in Opp'n to Pl.'s *Daubert* Mot. to Exclude the Test. of Defs.' Expert Branka Matevich 9-12, ECF No. 283.

[39] Pl.'s Reply in Further Supp. of Pl.'s *Daubert* Mot. to Exclude the Test. of Branka Matevich 1-3, ECF No. 296.

[40] *C R Bard, Inc. v. AngioDynamics Inc.*, Case No. 1:15CV218, 2018 WL 3130622, at *10-12 (D. Del. June 26, 2018) (determining expert issues can be properly addressed at trial, and noting at footnote 2 that "a *Daubert* motion is not intended to be a mini trial. It is intended to discern if the expert is qualitied to testify. The parties in all three of these *Daubert* motions have attempted to try many aspects of their case in these motions. This is not the proper way to argue *Daubert* motions.").

Business at Dartmouth College and Harvard Business School. For one year she worked at Chemical Bank in its investment banking group, doing work on several large transactions, mostly leveraged buyouts. She served as a director on the board of Bandag, Inc. and later as chair of the audit committee. Her work has appeared in numerous publications and her research focuses on several topics including "empirical assessments of valuation methods, methods for detecting 'earnings management' (a term connoting exploitation of opportunities to make accounting decisions that change reported income), [and] effective corporate disclosure strategies . . . ."[41]

Hutton opines that "Austin Smith's analysis of Millennium's solvency and her conclusions rely on unsupported assumptions, suffer from hindsight bias, and reflect flawed applications of widely accepted valuation principles."[42] Hutton contends Austin Smith improperly included a company specific risk premium and a small company risk premium in her discount rate.[43] Hutton believes Austin Smith's adjustments to Millennium's projected revenue and operating expenses are unsupported and unreliable.[44] Hutton says Austin Smith's adoption of a beta derived from five "comparable" companies is inconsistent with her opinion that the companies were "not sufficiently comparable to Millennium to provide a reliable estimate of value."[45] For these reasons and others included in her report, Hutton opined that Austin Smith's assertion that "'Millennium was clearly rendered

---

[41] Expert Report of Amy Hutton 4-5, App. A, ECF No. 256-2.

[42] *Id.* at 7.

[43] *Id.*

[44] *Id.* at 8.

[45] *Id.* at 20 (quoting Austin Smith Report ¶ 152).

balance sheet insolvent as of the 2014 Transaction' is based on flawed and unreliable analyses."[46]

Trustee contends "Hutton's opinion should be excluded because it is not based on sufficient facts and is not the product of the reliable application of the facts to accepted methodologies."[47] Defendants respond that Hutton is a rebuttal expert whose opinion is limited to identifying flaws in Austin Smith's analyses, Trustee's arguments go to weight not admissibility and Trustee otherwise fails to show that any of Hutton's opinions are unreliable.[48] Trustee replies that, although Hutton is called as a rebuttal expert, her report includes calculations and conclusions unsupported by the facts which render her opinions therein unreliable and inadmissible.[49]

In the Opinion, I refused to exclude Austin Smith's valuation testimony and specifically ruled that her inclusion of risk premiums in her determination of the WACC would be ripe for cross-examination or a counter expert opinion. Hutton is that counter expert. Similarly, Defendants' critique that Hutton's other opinions ignore facts on the ground or are based on an incorrect understanding of the facts can be explored on cross-

---

[46] *Id.* at 7 (quoting Austin Smith Report ¶ 145).

[47] Pl.'s Opening Br. in Supp. of Its *Daubert* Mot. to Exclude the Test. of Defs.' Proposed Expert Amy Hutton 10, ECF No. 256.

[48] Defs.' Mem. of Law in Opp'n to Pl.'s *Daubert* Mot. to Exclude the Test. of Defs.' Proposed Expert Amy Hutton 7-10, ECF No. 282.

[49] Pl.'s Reply in Further Supp. of Pl.'s *Daubert* Mot. to Exclude the Test. of Amy Hutton 1-2, ECF No. 297.

12

examination. Though criticized as an "academic," Hutton is qualified to rebut Austin Smith's valuation. Trustee's arguments primarily go to weight. This is classic trial fodder.[50]

*Conclusion*

For the foregoing reasons, Trustee's Motion for Summary Judgment is GRANTED. Trustee's two *Daubert* motions are DENIED.

Dated: June 27, 2025

Laurie Selber Silverstein
United States Bankruptcy Judge

---

[50] *Goldman v. Standard Ins. Co.,* 341 F.3d 1023, 1036 (9th Cir.2003) (denying summary judgment because determination of "who is correct in this battle of experts is not for [the Court] to decide"); *Osseo Imaging, LLC v. Planmeca USA Inc.*, CA. No. 17-1386-LPS, 2020 WL 6318724, at *11 (D. Del. Oct. 28, 2020) (denying motion to exclude portions of expert testimony where "each parties' experts [were] pointing the finger at each other's methodologies as incorrect[,]" and holding "[t]he experts' criticisms of one another may be explored at trial and go to the weight and not admissibility of their opinions.").